961 S.W.2d 100 (1998)
PREFERRED PHYSICIANS MUTUAL MANAGEMENT GROUP, INC., Appellant,
v.
PREFERRED PHYSICIANS MUTUAL RISK RETENTION GROUP, INC., Gerald F. Tuohy, Edward C. Mills, and Gerald F. Tuohy Management Services, Inc., Respondents.
No. WD 53114.
Missouri Court of Appeals, Western District.
January 20, 1998.
*101 James M. Yeretsky & Maher, Kansas City, for appellant.
Thomas S. Stewart, John M. Kilroy, Jr., Kansas City, for respondent.
SPINDEN, Judge.
After this court reversed the circuit court's declaratory judgment for the defendants and dismissal of the plaintiff's cause of action in two previous appeals, we consider this case once again.[1] This time, the circuit court has *102 granted summary judgment for the defendants in this contract dispute. The plaintiff, Preferred Physicians Mutual Management Group, Inc., (Management Group) appeals.[2] We reverse and remand for further proceedings.
Management Group's dispute with the defendants in this lawsuit centers on a contract Management Group entered into in July 1991 with Preferred Physicians Mutual Risk Retention Group, Inc., (Risk Retention Group). Management Group agreed to provide comprehensive management and operational services to Risk Retention Group. Management Group contends that Risk Retention Group first breached the contract by not paying management fees on March 1, 1994. Management Group sued on April 1, 1994, to enforce the contract.
The contract made these provisions concerning duration and termination:
The initial term of this Agreement shall be until January 1, 1995; provided, however, that this Agreement shall automatically be renewed for terms of five (5) years thereafter, unless terminated as permitted by [this contract by Risk Retention Group for cause] or both of the parties hereto give written notice of their intent not to renew this Agreement[.]
The circuit court agreed with Risk Retention Group's contention that these provisions should be interpreted as making the contract of indefinite duration. Because it deemed it to be a contract of indefinite duration, the circuit court concluded that it was terminable at the will of either party, so Risk Retention Group had a right to terminate the contract. It granted summary judgment for Risk Retention Group on May 14, 1996.
In reliance on circuit court's grant of summary judgment, the individual defendants moved for summary judgment on May 17, 1996, on essentially the same grounds as Risk Retention Group: that the contract was terminable at will.[3] The circuit court initially denied the individual defendants' motion for summary judgment on July 1, 1996, stating that "after consideration of appellate court direction, summary judgment relief may not be appropriate." After the individual defendants asked the circuit court to reconsider its ruling, the circuit court set aside its July 1, 1996, order and granted summary judgment for the individual defendants. It said, "Based upon representations by counsel,[4] the Court finds that plaintiff's claims are necessarily based upon contractual damages arising from the Service Contract which this Court determined to be of indefinite duration and, therefore, terminable at will." The circuit court confirmed its order of May 14, 1996, "in all respects."
Management Group attacks the circuit court's finding that the contract was for an indefinite duration by contending that the circuit court ignored "uncontradicted and unimpeached affidavit testimony" which suggested that the parties intended to enter into a perpetual contract. We disagree. "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning." J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 *103 (Mo. banc 1973) (quoting McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911 (1931)). A circuit court should not use parol evidence such as Management Group's affidavit testimony to vary or to contradict terms of an unambiguous instrument unless the party contends fraud, mutual mistake, accident or erroneous omission. Craig v. Jo B. Gardner, Inc., 586 S.W.2d 316, 324 (Mo. banc 1979). In interpreting a covenant, we must use the "plain, ordinary and usual meaning" of the covenant's words. Stolba v. Vesci, 909 S.W.2d 706, 708 (Mo.App.1995). Hence, even if the affidavit was uncontradicted and unimpeached, the circuit court properly ignored it if the contract was unambiguous.
Although the contract was quite unusual in its providing for automatic renewals unless both parties assented to termination, it was not ambiguous. "An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Rodriguez v. General Accident Insurance Company of America, 808 S.W.2d 379, 382 (Mo. banc 1991). We find nothing duplicitous, indistinct, or uncertainty about the meaning of the words used in this contract. Its oddity does not make it ambiguous.
The first clause of the contract's duration provision said, "The initial term of this Agreement shall be until January 1, 1995[.]" We find nothing indistinct or unclear about this term. The plain meaning of these words indicates that the contract had a beginning term which lasted until January 1, 1995.
Nor do we find anything ambiguous about the next clause of the duration provision: "provided, however, that this Agreement shall automatically be renewed for terms of five (5) years thereafter[.]" The plain meaning of these words indicates that the contract would renew itself after January 1, 1995, with no affirmative action by the parties and would continue for another five-year term.
The dispute which has arisen is whether this language created a perpetual contract. We agree with Management Group that the practical effect of the agreement would be to create a perpetual, never-ending contract. It was written to endure initially only until January 1, 1995, but it then was to renew itself "automatically" for a series of five-year contracts for so long as both parties did not work in unison to terminate the ongoing perpetuation. Though stated as a series of five-year contracts, the practical effect was a perpetual contract.
If this were the end of the issue, we would concur with Management Group. It is not. The issue is not whether the parties created a contract which had the effect of perpetual duration. Instead, the issue is whether the parties created an enforceable perpetual contract. They did not.
The Supreme Court has made clear that, to be enforceable, a contract which purports to run in perpetuity must be adamantly clear that this is the parties' intent. The Supreme Court has instructed that "where the intention to [impose a perpetual obligation] is unequivocally expressed, the contract will be upheld.... But in this jurisdiction,... courts will only construe a contract to impose an obligation in perpetuity when the language of the agreement compels that construction." Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 270-71 (1940) (quoting James Maccalum Printing Company v. Graphite Compendius Company, 150 Mo.App. 383, 130 S.W. 836, 838 (1910)). This, undoubtedly, is why the the Paisley court noted that Missouri courts "are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation." Id. 143 S.W.2d at 270.[5] The Paisley court refused to declare an obligation to be perpetual even though the contract, which had no termination date, said: "It is *104 understood that said contract and supplements thereto will be continued in full force and effect and will not be cancelled or modified, except by mutual agreement[.]" Id. at 269. The court's rationale was that the contract did not have "any language which ... clearly expresses an intention of the parties that the contract should continue so long as appellant should live." Id. at 270. The court noted that the contract evidenced "a present intention not to cancel [but not] an express intention to confer upon appellant a perpetual right of employment." Id.
Management Group's and Risk Retention Group's contract was equivocal in the same way. It does not compel a reader to conclude that they intended perpetual performance. Had the parties desired a perpetual contract, they could have easily included specific language expressing that desire rather than setting up a series of five-year contracts which had to be renewed unless both parties agreed not to renew. Indeed, the Supreme Court of Vermont has noted that such an arrangement, "[i]n its usual sense[,] ... does not point to perpetuity." Rutland Amusement Company, Inc. v. Seward, 127 Vt. 324, 248 A.2d 731, 734 (1968). That a contract would run for five years, terminate, and be in need of renewalwhether automatically or otherwisebelies any contention that it was to run in perpetuity. A contract that runs forever has no need for renewal. Given the rarity with which courts will interpret a contract to impose a perpetual obligation, Superior Concrete Accessories v. Kemper, 284 S.W.2d 482, 490 (Mo.1955),[6] we do not find that this was an enforceable contract in perpetuity.
This was the conclusion, too, of the Court of Appeals of Georgia considering an employment contract which provided:
The parties ... agree and mutually contract that this their contract shall remain in full force and effect for a period of five years from the date of execution thereof with automatic renewals thereof at the end of the first five-year period for an additional five-year period, and continuing on in renewals on basis of five years for each renewal until and unless the party of the second part [the employee] should fail or refuse to comply with his part of the aforesaid agreement[.]
Nikas v. Hindley, 99 Ga.App. 194, 108 S.E.2d 98, 100 (1959). In response to the employee's contention that this provision articulated a perpetual contract, the Georgia court said, "The provision for automatic renewal when given a reasonable construction will not be held to require the renewal or extension of the contract for additional five-year periods except upon the mutual assent of the parties thereto at or before the date of renewal." Id. 108 S.E.2d at 102 (emphasis added). The Georgia court enforced the contract for the initial five-year period but refused to enforce it beyond that.
In concluding that this was a contract of indefinite duration, the circuit court relied on several Missouri appellate opinions.[7] Unlike this case, however, the contracts in all of those cases contained no set term or termination date and did not provide for automatic renewal. Given the fixed date of duration of this contract and the parties' apparent belief that their contract would be in need of renewal after January 1, 1995, we do not deem it to be an enforceable perpetual contract.
As an alternative to this interpretation, Management Group directs our attention to Union Pacific Railroad Company v. Kansas City Transit Company, 401 S.W.2d 528 (Mo. App.1966), where the court interpreted the duration of a contract between the parties for division of costs of repair and maintenance of a street viaduct. Though the contract contained no termination date, the court rejected the Transit Company's arguments that because the holding in Paisley prevented imposition of a right in perpetuity, that the contract was terminable at the will of either party. Id. at 534. Instead, the court found *105 that because the contract was entered into under the compulsion of a city ordinance requiring the parties to contribute to the reconstruction and future maintenance of the viaduct, that the "contract necessarily reflects [the ordinance's] objects and purposes [for so long as the viaduct was used `as and for a public highway']." Id. The court, therefore, held that the contract was limited in duration for only so long as the structure was used for a public highway. Id. No statute or ordinance affected the contract in the present case that would compel such a result here.
Management Group also notes that in Judson Roberts Company v. Seaboard Allied Milling Corporation, 435 S.W.2d 26, 27 (Mo. App.1968), the court construed a contract providing for "continuation of ... services unless cancelled 60 days prior to August 27, 1965, for an additional year." Management Group is correct that this court held that Seaboard Allied Milling was responsible for paying for a shipment of goods because it had not cancelled according to the contract's provision. Id. at 28. We did not rule, however, that this was because it was a perpetual contract. This case is hardly on point.
Hence, contrary to Management Group's contention, this was not a perpetual contract which lent itself to enforcement by the circuit court. We, therefore, agree with that portion of the circuit court's analysis. The circuit court erred, however, in concurring with Risk Retention Group that, because the contract was not perpetual, it should be deemed to be of indefinite duration and terminable at the will of either party.
Although this was the conclusion reached by the Paisley court, 143 S.W.2d at 271, the contract in Paisleyunlike Management Group's and Risk Retention Group's contracthad no set, definite terms of duration. The court noted that expiration of the contract in that case did "not depend upon the expiration of a period of time, upon the completion of a given undertaking, or upon the happening of some event." Id. at 271. To the contrary, the contract here had an initial period ending at midnight on December 31, 1994, and had set termination dates thereafter of midnight on December 31, 1999, and on December 31, 2004, and on December 31, 2009, and on December 31, 2014, etc. Hence, it was not an indefinite contract, but a contract of definite, fixed terms.
Risk Retention Group's performance was obligated under the contract until at least midnight on December 31, 1994. Management Group contends that its failure to heed its obligations after March 1, 1994, was a breach. Assumingand the circuit court will have to determine the issue on remand that Risk Retention Group's failure to pay the fees after March 1, 1994, was a breach, we agree. If upon remand the circuit court determines that Risk Retention Group breached its contractual obligation, the circuit court shall determine Management Group's damages through December 31, 1994.
The circuit court need not consider damages after that date for the reason offered by the Georgia Court of Appeals: "The provision for automatic renewal when given a reasonable construction will not be held to require the renewal or extension of the contract for additional five-year periods except upon the mutual assent of the parties thereto at or before the date of renewal." Nikas, 108 S.E.2d at 102. Management Group's and Risk Retention Group's contract did not provide for mutual assent for renewal. It provided that both parties had to approve of termination to "short-circuit" the contract's automatic renewal. Management Group, under a literal reading of the contract, could have coerced Risk Retention Group, against its will, into another five-year period of obligations. This is hardly mutual assent, and we refuse to enforce the contract's renewal provisions without assurance of mutual assent.
We, therefore, reverse the circuit court's summary judgment and remand the case to it to determine whether Risk Retention Group breached the contract as Management Group contends. If it concludes that Risk Retention Group did breach the contract before January 1, 1995, it shall measure Management Group's damages for a period ending at midnight on December 31, 1994.
*106 We turn to issues raised by the individual defendants.[8] Although they argue that summary judgment should have been entered in their favor irrespective of whether the contract was terminable at will, their arguments are interwoven with reasons why Management Group cannot establish one or more elements of the claims of breach of fiduciary duty, tortious interference with contract, and civil conspiracy given the circuit court's determination that the contract was terminable at will.[9] Because we have determined that, at least until January 1, 1995, this was a contract of fixed duration, and not terminable at will, their arguments, supported by cases analyzing at will doctrines, are not applicable and are not sufficient to support summary judgment.
The individual defendants also assert that the service contract prohibited Management Group from exercising any control over Tuohy. This, they contend, prevented Management Group from proving claims of breach of fiduciary duty, tortious interference with contract and civil conspiracy. They point to these provisions:
I.A.9.... [Management Group] will identify, hire and compensate individuals who will be elected by the Board of Directors of [Risk Retention Group] as the officers of [Risk Retention Group]. Those officers and the sales force of [Risk Retention Group], while acting for [Risk Retention Group], will act at all times solely in their capacity as officers and sales force of [Risk Retention Group] and will at all times comply with the policies established by the Board of [Risk Retention Group] with respect to their services.
. . . .
IX.A. In performing the services pursuant to this Agreement, [Management Group] shall not be an agent of [Risk Retention Group] for any purpose nor shall [Management Group] control [Risk Retention Group] in any way, direct or indirect. All employees provided to the insurance company shall act subject to the control of [Risk Retention Group's] Board of Directors and officers and shall act solely on behalf of the insurance company as its employees and not on behalf of or subject to control of [Management Group] or its board of directors.
The individual defendants contend that these clauses prevent Tuohy, Tuohy Managment Services, or Mills from acting for Management Group's benefit under any circumstance. We disagree.
All that the contract makes clear its that Managment Group was obligated to assist Risk Retention Group in finding competent employees. Not clear is whether those employees who were "identified, hired, and compensated" by Management Group remained Management Group's employees or whether Management Group was merely performing personnel functions and that the individuals hired became Risk Retention Group's employees.
The contract is subject to multiple interpretations. Did individuals who Management Group hired work for its benefit until needed by Risk Retention Group during which time they would work under Risk Retention Group's direction and control? Or did the "provided to" language evidence a relinquishment of control from the inception of the employee's hiring?
Essentially, this becomes an issue of whether the two entities had designated employees of their own, or whether all employees worked in a dual capacity. When employees perform duties for Risk Retention Group, the contract requires that they act on behalf of, and under the control of, Risk Retention Group. Nothing in the contract, *107 however, prevents Management Group from hiring employees to perform its duties. Had it done so, the employee would have had a fiduciary duty to Management Group.
Tuohy was president of Risk Retention Group's board of directors. As an officer, he had a fiduciary duty to Risk Retention Group. Preferred Physicians Management, 918 S.W.2d at 810. Management Group argues, however, that it also hired Tuohy and paid his management company, TMS, $5000 a month in compensation to oversee all management services being provided to Risk Retention Group. By accepting this compensation, Tuohy possibly placed himself in the position of owing a fiduciary duty to Management Group.
As we said in our prior opinion in this case, "[m]aintaining a dual role in two entities involved in a corporate business relationship is not a per se breach of one's fiduciary duty[.] Transactions involving the two entities, however, are scrutinized to ensure that they are `fair, open and in the utmost good faith.'" Id. at 811 (relying on James E. Brady & Co., Inc. v. Eno, 992 F.2d 864, 868 (8th Cir.1993)). Missouri law does not preclude an individual's owing fiduciary duty to more than one entity involved in the same business transaction.
In appellate court review of motions for summary judgment, "[t]he adage that the record is viewed `in the light most favorable to the non-movant' means that the movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted; any evidence in the record that presents a genuine dispute as to the material facts defeats the movant's prima facie showing." ITT Commercial Finance Corporation v. Mid-America Marine Supply Corporation, 854 S.W.2d 371, 382 (Mo. banc 1993). A genuine dispute exists "where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts[,]" and "it is not the `truth' of the facts upon which the court focuses, but whether those facts are disputed." Id.
We find that genuine issues of material fact existed which precluded summary judgment concerning the nature of Tuohy's relationship with, and fiduciary duty to, Management Group. Because the terms of the service contract do not prohibit Management Group from hiring individuals to work for it, the individual defendants' reliance on the terms of the service contract purporting to limit Tuohy's fiduciary duty to that duty owed to Risk Retention Group is insufficient to establish a right to judgment as a matter of law. Rule 74.04(c)(3).
To establish a claim of tortious interference with contract, Management Group must show the existence of a contract or valid business relationship or expectancy, the defendants' knowledge of the contract or relationship, intentional interference by the defendant inducing or causing a breach of the contract or relationship, the absence of justification for the defendants' actions, and damages resulting from the defendants' conduct. Preferred Physicians Management, 918 S.W.2d at 812. Because the individual defendants contested most of these elements only on the basis of Tuohy's privilege as an officer of Risk Retention Group to induce the termination of an at will contract and is, therefore, inapplicable, we address only the issue of absence of justification.
The element of absence of justification to interfere with a contract fails where a party has a legal right to terminate a contract. Meyer v. Enoch, 807 S.W.2d 156, 159 (Mo.App.1991). "A corporate officer, acting within his or her authority, is privileged to induce a breach of a corporate contract provided that he or she uses no improper means, acts in good faith to protect the corporate interest and does not act out of self interest." Id. Improper means are independently wrongful acts "recognized by statute or common law such as misrepresentation of fact, threats, violence, defamation, and restraint of trade." Id. at 159-60.
Management Group alleges that Tuohy, individually and as TMS' principal, used improper means to induce Risk Retention Group to breach the service contract with Management Group. It also contends that Tuohy acted out of self interest in securing for himself, and his company, management services which they would provide directly to Risk Retention Group. Management Group *108 contends that Tuohy's breach of fiduciary duty to Management Group and his misrepresentation to Management Group that he and TMS could be relied upon to execute Management Group's contract obligations were improper and satisfied the absence of justification to induce breach of the contract.
The individual defendants respond that, because the contract was at will, Tuohy had the legal right to induce termination of the contract, so Management Group had no right to control Tuohy or TMS under the terms of the contract. They also assert that, in any event, business justification for termination of the contract existed when Risk Management Group began questioning the amount of fees which it paid to Management Group. As we have noted, arguments resting on at will contracts are inapplicable to this case, and genuine issues of material fact exist as to whether Management Group had a right to control Tuohy or TMS under the terms of the contract when they were engaged by Management Group.
As to the existence of a business justification, we recognize that the contract required Risk Retention Group to give Management Group notice and opportunity to cure any defects in its performance, and that "[a]ny controversy or dispute arising out of or relating to [the service contract] or the breach thereof shall be settled by arbitration."[10] By failing to address compliance with these terms, the individual defendants failed to support their claims of business justification for the breach of the contract.
We, therefore, reverse the circuit court's summary judgment as to each of the individual defendants on the counts of breach of fiduciary duty, and tortious interference with contract. We also reverse the summary judgment on the civil conspiracy count which may be supported by the circuit court's subsequent finding of an underlying unlawful act of breach of fiduciary duty against Tuohy. Preferred Physicians Management, 918 S.W.2d at 815.
Because we reverse the circuit court's summary judgment as to each of the defendants, we need not address the merits of Management Company's third point regarding time for discovery. This case is remanded for proceedings consistent with this opinion.
BRECKENRIDGE, P.J., and HOWARD, J., concur.
NOTES
[1] This actually is a second consideration of this third appeal. After issuing an opinion on May 27, 1997, we granted the parties' motion for a rehearing on September 2, 1997. Our opinions in the previous cases have been published at 916 S.W.2d 821 and at 918 S.W.2d 805. Detailed factual background regarding the history of parties' disputes can be found in these previous opinions and will not be reiterated here except where necessary to explain our decision.
[2] Management Group sued Risk Retention Group for specific performance and breach of contract. It also sued Gerald F. Tuohy for breach of fiduciary duty; Risk Retention Group, Tuohy, and Tuohy Management Services, Inc., for tortious interference with contract; Risk Retention Group for misappropriation of business opportunities; and Tuohy and Edward C. Mills for civil conspiracy.
[3] The individual defendants also alleged that terms of the service contract and Gerald F. Tuohy's position as an officer and director of Risk Retention Group precluded his owing any duty to Management Company; therefore, the claims of breach of fiduciary duty, tortious interference with contract, and civil conspiracy had no basis.
[4] The circuit court did not disclose what the representations were, and they appear to be outside the record.
[5] In its motion for rehearing, Management Group notes that the Paisley court held that a court, in construing a contract, could determine parties' intention by considering the parties' relationship, the contract's subject matter, customary usage, and the facts and circumstances surrounding the agreement. It argues that this supports its contention that the circuit court should have considered its affidavit testimony concerning its and Risk Retention Group's intentions. The Paisley court, however, was construing "doubtful language:" the contract's reference to the undefined terms, "open territory" and "exclusive territory." Id. 143 S.W.2d at 268. We do not face such doubtful language in this case.
[6] The Supreme Court noted that "[o]nly in such negative promises as to forbear suit or not to carry on a business or occupation is so broad an interpretation likely to be permissible." Id. (quoting 1 Williston, Contracts, Revised Edition, § 38).
[7] Kemper, 284 S.W.2d at 482; Paisley, 143 S.W.2d at 262; Haith v. Model Cities Health Corp. of Kansas City, 704 S.W.2d 684 (Mo.App. 1986)
[8] We identified these defendants in note 2 supra.
[9] The individual defendants' appellate brief claims, in response to the breach of fiduciary duty claim, that Management Group cannot prove causation and damages from termination of a contract terminable at will. As to the tortious interference with contract, the individual defendants' claim that the elements of causation, absence of justification, and damages cannot be proven by Management Group where the contract was terminable at will. The individual defendants also claim that, because civil conspiracy is a liability extender and damages cannot be proven under the counts alleging breach of fiduciary duty and tortious interference with contract because the contract is terminable at will, this count must also be denied.
[10] Section B under the termination clause, section V, governs the right of Management Group to cure within 90 days after written notice of one of four termination events including misapplication of funds, breach of the agreement in providing services, willful neglect of duty of Management Group or its officers, or conviction of a felony of Management Group's officers. Section VI specifies the requirement of arbitration.