**CEDARBRIDGE, LLC., Appellant,**

v.

**Joseph EASON, et al., Respondent.**

**No. ED 91544.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 26, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 13, 2009.

Application for Transfer Denied
Sept. 1, 2009.

Phillip K. Gebhart, Desoto, MO, for Appellant.

Jill R. Rembusch, St. Louis, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

CedarBridge, LLC ("CedarBridge") appeals the trial court's judgment in favor of Joseph Eason ("Eason") after two delinquent tax sales. We affirm.

## I. BACKGROUND

This case arises from the August 2005 delinquent tax sales of two properties located at 7225 and 7233 Olive Boulevard.[1] Eason had acquired the properties at issue in 1996 by way of a General Warranty Deed. In 2002, he conveyed a security interest in the properties to Union Planters Bank ("the Bank") as beneficiary and Quatre Corporation ("Quatre") as trustee by way of a deed of trust. Eason failed to pay the property taxes in 2002, 2003, and 2004. CedarBridge was the successful bidder at the August 2005 delinquent tax sales and acquired the Collector's Deeds to the properties in August 2006.

Eason resides at 7069 Kennedy in St. Louis, Missouri, and has resided there since at least 2002. CedarBridge member William Glasgow ("Glasgow") testified that CedarBridge sent notice to Eason via certified mail at 4800 N. 68th Street, Paradise Valley, Arizona and 9500 Green Valley Drive, St. Louis, Missouri.[2] The notices sent by certified mail were returned to CedarBridge as undeliverable. Glasgow also testified that CedarBridge posted notices on the two properties in May 2006, and produced photographs of the postings at trial. CedarBridge similarly claimed that it sent notice to the Bank and Quatre. Glasgow testified that CedarBridge possessed return receipts indicating that certified mailings of notice had been sent to

---

1. Both delinquent tax sales were first or second offerings.

2. The Arizona address is the residence where Paul and Ann Barenberg live, the parties who conveyed the property to Eason in 1996. The Missouri address is identified in the Bank's deed of trust as the address for tax notices.

those entities, but could not produce the receipts during the litigation.

■ In October 2006, CedarBridge filed a petition seeking to quiet title to the two properties and to confirm its Collector's Deeds. In response, Eason filed a counterclaim seeking a declaratory judgment that CedarBridge had failed to comply with the notice requirements in Section 140.405 RSMo Cum.Supp.2003 and to set aside the Collector's Deeds. Eason also filed claims for ejectment and tortious interference with a valid contract, based on CedarBridge's having collected rent from the properties' tenants. CedarBridge asserted conditional claims for recoupment, but declined to present evidence thereon at trial, and instead reserved that issue for a later hearing.

To clarify the process, we summarize the notice requirements in delinquent tax sale purchases.

*Who must receive notice*

For all tax sales, both first and second offerings and third offerings, the purchaser must give notice to everyone who holds a publicly recorded deed of trust[3], mortgage, lease, lien or claim to the real estate. Section 140.405. This includes one who was the publicly-recorded owner of the property prior to the sale. Section 140.405. Parties whose names and addresses appear on the front page of the deed of trust document, such as beneficiaries of deeds of trust and trustees of deeds of trusts, must receive notice as well. *Kusher*, 231 S.W.3d at 204.

*Notice must be sent via certified mail to the recipient's last known available address.*

All redemption notices must be sent via certified mail. Section 140.405. In the case of a publicly-recorded owner of property sold at a delinquent tax sale, the notice must be sent to the recipient's last known available address. If the tax sale purchaser receives notice that the certified mail was not claimed, i.e. that the intended recipient did not receive notice of the sale, the purchaser must take additional, reasonable steps to effectuate notice. *Schlereth v. Hardy*, 280 S.W.3d 47, 52–53 (Mo. banc 2009).

*Form of notice: First and Second Offerings*

First and second offering tax sales have a one-year redemption period that begins on the date of the sale. Section 140.340.1 RSMo Supp.2003. Therefore, in a first or second offering tax sale, the notice must inform the recipient that s/he has one year from the date of the tax sale to redeem the property or be forever barred from doing so. *Keylien v. Johnson*, 284 S.W.3d 606, 612–13 (Mo.App. E.D.2009). The purchaser must send the notice at least ninety days before it is authorized to acquire the deed to the property, i.e. at least ninety days before the expiration of the one-year redemption period. Section 140.405.

*Form of notice: Third Offering*

In the case of a third offering, the notice must inform the recipient that s/he has ninety days from the date the purchaser files the affidavit with the county collector in which to redeem the property, or be forever barred from doing so. *Keylien*, 284 S.W.3d at 612–13. Thus, third offering notices *must* inform the recipient of the date on which the purchaser intends to file an affidavit with the county collector. After sending the required notices, the purchaser shall then notify the county collector by affidavit that it has given proper

---

**3.** Any entity holding a publicly recorded deed of trust *at the time the tax purchaser was required to send notice of the right to redeem* must receive notice. *Rossel*, 209 S.W.3d at 502; *Glasgow Enters., Inc. v. Bowers*, 196 S.W.3d 625, 631–2 (Mo.App. E.D.2006).

notice to all required parties. Section 140.405. Again, the ninety day redemption period begins to run on the day the affidavit is filed.

A delinquent tax sale purchaser's failure to comply with *any* of the above notice requirements will result in its losing all interest in the real estate as a matter of law. Section 140.405.

The case was tried to the court, and Eason filed a Motion for Judgment at the Close of Plaintiff's Case ("Motion"). The trial court granted the Motion and quieted title to the properties in Eason. The court held that: (1) CedarBridge's Collector's Deeds were invalid for its failure to comply with the notice requirements of Section 140.405 and (2) Eason was entitled to recover on his ejectment and tortious interference claims, for which the court awarded him a total of $52,800 in damages. CedarBridge appeals.

## II. DISCUSSION

In a judge-tried case, we will affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously applies the law. *Glasgow Enters., Inc. v. Brooks*, 234 S.W.3d 407, 410 (Mo.App. E.D. 2007). We must view the evidence and the inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence. *Id.*

CedarBridge asserts thirteen points of error on appeal. To simplify the issues, we will address some of its points categorically.

CedarBridge's first six points on appeal challenge the trial court's findings regarding notice. We address these points simultaneously because we believe Cedar-

Bridge's failure to give notice to the Bank and to Quatre to be dispositive of this issue.

We first summarize the trial court's findings with respect to notice. The trial court held that CedarBridge had failed to meet the requirements of Section 140.405 in multiple respects. As to Eason, the court found that CedarBridge had notice that Eason did not reside at the given addresses, because all the notices sent via certified mail were returned as undeliverable.[4] CedarBridge was therefore aware that Eason did not have notice of the tax sales, and the court held that due process required it to take additional reasonable steps to notify Eason of his right to redeem.

The trial court also found portions of CedarBridge's testimony to be fabricated. Due to certain discrepancies that surfaced at trial, the court discredited Cedar-Bridge's testimony that it had posted notice on the two properties. As to the Bank and Quatre, the court found that Cedar-Bridge had failed to send them any notice. The trial court also found the form of the purported notices to be deficient because, according to the trial court, CedarBridge incorrectly informed the recipients of their statutory redemption rights.

Section 140.405 states, in pertinent part:

Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following [notice] requirement ... At least 90 days prior to the date when a purchaser is authorized to acquire the deed, *the purchaser shall notify any person who holds a publicly recorded deed of trust*, mort-

4. The trial court also found that Cedar Bridge had not sent any notices to Eason via regular mail. Because regular mail is not an accept-

able method of notice under the statute, we do not address this issue in the opinion. *See* Section 140.405.

gage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. *Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this [notice] provision shall result in such purchaser's loss of all interest in the real estate.* (Emphasis added.)

■ As this Court noted in *Valli v. Glasgow Enters., Inc.,* 204 S.W.3d 273 (Mo. App. E.D.2006), the notice requirements of Section 140.405 use the term "shall." *Id.* at 276. "It is clear that when a statute mandates that something be done by providing that it *shall* occur, and it also provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed." *Id.* at 276–77 (quoting *Hutchison v. Cannon,* 29 S.W.3d 844, 847 (Mo.App. S.D.2000)).

In *Glasgow Enters., Inc. v. Kusher,* 231 S.W.3d 201 (Mo.App. E.D.2007), this Court set aside a tax sale due to the purchaser's failure to send notice to the beneficiary of a deed of trust. In doing so, this Court stated:

> Section 140.405 requires a purchaser at a tax sale to notify all deed of trust holders of their right to redeem. Notice to a deed of trust holder must be sent by certified mail to the deed of trust beneficiary at the beneficiary's last known ad-

dress. The notice provisions of section 140.405 are mandatory and failure to follow them results in the purchaser losing its interest in the property.

*Id.* at 204.

Glasgow testified at trial that Cedar-Bridge sent notice via certified mail to the Bank and Quatre, and that it possessed signature cards from both entities indicating that they had received the notice. CedarBridge and Glasgow, however, were unable to produce the signature cards at any point during the litigation. The trial court concluded that Glasgow's testimony was fabricated and found that CedarBridge had not sent notice to the Bank or to Quatre, both of whom held a publicly recorded deed of trust at that time.[5] This Court must defer to the trial court's credibility determinations. *Vinson v. Vinson,* 243 S.W.3d 418, 423 (Mo.App. E.D.2007).

Pursuant to the plain language of Section 140.405 and the case law applying it, CedarBridge's Collector's Deeds are invalid. Failure to send notice of the right to redeem to the holders of a publicly recorded deed of trust results in the purchaser losing all interest in the real estate as a matter of law. Section 140.405; *Glasgow Enters., Inc. v. Rossel,* 209 S.W.3d 498, 502 (Mo.App. E.D.2006); *Kusher,* 231 S.W.3d at 204. Consequently, CedarBridge's first six points are denied.

■ In *Schlereth,* the Missouri Supreme Court held that, if certified mail is returned unclaimed to a tax sale purchaser, "due process requires the state[6] to take additional reasonable steps to notify the

---

**5.** CedarBridge argues that Quatre was not entitled to notice because they are not the holder of the deed of trust. Quatre is listed as the Trustee on the deed of trust, and their name and address appear on the same page of the same document as that which provides the name and address of the Bank. Thus, they are entitled to notice under the statute.

*See Glasgow Enters., Inc. v. Kusher,* 231 S.W.3d 201, 204–5 (Mo.App. E.D.2007).

**6.** The Court said that "there is no question [a purchaser], proceeding under section 140.405, takes on the governmental obligation to give notice that satisfies due process." *Id.* at 51.

property owner." *Id.* at 48 (citing *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006)). The Court stated that the additional reasonable steps could take the form of regular mail, posted notice calculated to notify the owner, or service by a process server.[7] *Id.* at 52–53. In any event, *Schlereth* holds that, in order to comply with constitutional notice requirements, a tax sale purchaser must take additional follow-up measures to effectuate notice when a certified-mail notice of a tax sale has been returned undelivered. *Id.*

■ In its seventh point on appeal, CedarBridge argues that the trial court erred in entering judgment against it in ejectment. We disagree.

■ Ejectment is a possessory action. *Elton v. Davis,* 123 S.W.3d 205, 213 (Mo. App. W.D.2003). To prevail on a claim for ejectment, the plaintiff must show that the defendant was in possession of premises to which the plaintiff had the right to possession. *Id.*

Possession by the tenants is sufficient to establish CedarBridge's possession of the properties. *See Farm Props. Holdings, L.L.C. v. Lower Grassy Creek,* 208 S.W.3d 922, 928 (Mo.App. S.D.2006) (defining possession as "the detention and control ... of anything which may be the subject of property ... either held personally or by another who exercises it in one's place and name."). CedarBridge also possessed the properties when it collected rent from the tenants. *See Fletcher v. Conoco Pipe Line Co.,* 129 F.Supp.2d 1255, 1264 (W.D.Mo. 2001) (stating that "[p]ossession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use and taking the ordinary profits ...." (quoting

*Wood v. Phillips,* 50 F.2d 714, 715 (4th Cir.1931))).

■ Eason retained title to the properties during the time period that Cedar-Bridge was collecting the rent because CedarBridge's Collector's Deeds were invalid. The tax sale "merely operates to vest the purchaser with an inchoate right or interest subject to a statutory right of redemption." 72 Am.Jur.2d *State and Local Taxation* section 947. Throughout the redemption period, title remains in the former owner. *Id.* Thus, Eason had the right to possess the properties because he was still the owner of record. Because CedarBridge possessed properties which Eason had a right to possess, the trial court did not err in entering judgment against CedarBridge in ejectment. Point denied.

In its eighth and ninth points on appeal, CedarBridge argues that the trial court erred in entering judgment against it for tortious interference with a contract. We disagree.

In the eighth point on appeal, Cedar-Bridge argues that its interference was justified because the Collector's Deeds served to vest title in CedarBridge and to extinguish the unrecorded leases.

■ Justification to interfere with a contract exists where a party has a legal right to terminate a contract. *Preferred Physicians Mut. Mgmt. Group, Inc. v. Preferred Physicians Mut. Risk Retention Group, Inc.,* 961 S.W.2d 100, 107 (Mo.App. W.D.1998).

■ Beginning August 23, 2006, Cedar-Bridge argues that it was justified in collecting tenants' rents because the Collector's Deeds, issued to it on that date,

---

7. The Court ultimately called upon the legislature to act. It stated that, "[i]n the absence of a legislated corrective," the enumerated measures satisfy the notice requirements of the *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) through *Jones* line of constitutional cases. *Id.* at 52–53.

vested title to the properties in Cedar-Bridge, and extinguished any unrecorded leases on the properties.

We do not agree with CedarBridge that the leases were extinguished by the tax sale. CedarBridge is correct in that *"[a]ssuming that the tax deed creates a new and paramount title,* its effect is to extinguish an existing lease given by the former owner...." 72 Am.Jur.2d *State and Local Taxation* section 954 (emphasis added). However, CedarBridge never attained the title to the properties. As mentioned, the tax sale merely "vests an inchoate right in the purchaser, subject to the statutory right of redemption." *Id.* section 947. Title remains in the former owner throughout the redemption period, and *only if the purchaser takes the necessary steps to perfect his title* will he be vested with new and paramount title, free from all encumbrances existing prior to the sale. *Id.*

In failing to comply with the notice requirements, CedarBridge did not take the necessary steps to perfect its title. Thus, title to the properties never vested in Ce-darBridge, but rather remained with Ea-son, and the unrecorded leases were not extinguished.

In the ninth point on appeal, Cedar-Bridge argues that there is no substantial evidence to indicate that it knew its actions interfered with a valid contract.

■ Tortious interference with a contract has five elements: (1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) resulting damages. *Envirotech, Inc. v. Thomas,* 259 S.W.3d 577, 590 (Mo.App. E.D.2008).

■ The unrecorded leases were contracts of which CedarBridge had knowledge. CedarBridge knew that Eason had not received the notices sent by certified mail, that notice had not been posted at the properties, and that the Bank and Quatre did not have notice. Accordingly, CedarBridge knew that it had not complied with the notice requirements of the statute. CedarBridge therefore was not justified in its interference, and collecting rent from the tenants constituted intentional interference with a valid contract. CedarBridge's points eight and nine are denied.

■ In its tenth point on appeal, Ce-darBridge argues that the trial court erred in awarding damages based on the reasonable rental value of the property rather than the actual rent that CedarBridge collected. We disagree.

The trial court granted Eason $40,800 representing lost reasonable rental value on the properties. Of the $40,800 in lost rental value, the trial court found that Eason was entitled to recover $28,800 in ejectment damages, beginning on February 2007, the date he filed his counterclaim, and ending May, 2008, the date of judgment. The court found he was also entitled to recover $12,000 for tortious interference with a contract spanning August 2006, through January 2007.[8] The court arrived at these figures based on Eason's testimony that the eight apartments on the two properties normally had 80% occupancy and each rented for $375 per month.

CedarBridge's argument on this point is somewhat muddled. However, it appears to claim that the "hypothetical" reasonable

---

8. Eason would reap a double recovery if he were allowed damages on both the tort *and*

ejectment claim after February 2007.

rental value of $40,800 is inappropriate since CedarBridge collected only $12,000 in actual rents during this time period. CedarBridge asserts that "the proper equitable remedy is to place the parties in their ex ante position prior to the forced sale."

CedarBridge has not cited any authority for the proposition that reasonable rental value is an inappropriate measure of damages in an ejectment action. Further, an action for ejectment is not an equitable action but an action at law. *Elton v. Davis*, 123 S.W.3d 205, 213 (Mo.App. W.D.2003). A plaintiff who prevails on an ejectment claim may recover damages for rent, profits, waste and injury. Section 524.110 RSMo 2000. Reasonable rental value is an appropriate measure of damages so long as the figure is supported by substantial evidence. *Fugate v. Rice*, 815 S.W.2d 466, 471 (Mo.App. S.D.1991).

The evidence presented at trial was that CedarBridge did not maintain the properties. Eason testified that windows were left open, electrical wiring was exposed, doors were rotting, and there was sewage in the basement. Furthermore, Cedar-Bridge did not ensure that the properties remained fully occupied. They were fully occupied when CedarBridge took possession, but had only three tenants at the date of judgment. Given these circumstances, Eason's testimony was substantial evidence to support the damage award based on the reasonable rental value of the properties. Point denied.

In its eleventh and twelfth points on appeal, CedarBridge argues that the trial court erred in entering judgment against it for waste. We disagree.

The trial court awarded Eason $12,000 in damages on his ejectment claim representing waste to the properties. Cedar-Bridge's argument on this point is misdirected because Section 524.110 clearly contemplates damages for waste in an ejectment action. *See* Section 524.110 (stating that a plaintiff who prevails in an ejectment action "shall recover damages for all waste and injury ... down to the time of assessing the same....").

Furthermore, CedarBridge has not cited any on-point authority which indicates that waste damages in an ejectment action must be supported by evidence of diminution in value or of the cost of repair. Eason testified at trial regarding the specific instances of waste to the property and stated that in his estimation it would cost approximately $12,000 to repair the exteriors after CedarBridge's possession. The trial court accordingly awarded him $12,000 in damages. Given the testimony at trial, and lack of case law to the contrary, we believe that award was based on substantial evidence. CedarBridge's points eleven and twelve are denied.

In the thirteenth and final point on appeal, CedarBridge argues that the trial court erred in tolling the interest on its conditional claims for recoupment. We disagree.

Section 140.630.1 RSMo 2000 allows the defendant in a suit to set aside a tax deed to set up in his answer a claim for taxes and interest paid by him on the property. Section 140.600.1 RSMo 2000 also requires that any person seeking to set aside a tax deed shall in his petition offer to refund to the defendant all taxes paid by the defendant "together with interest thereon from the date of payment of such taxes *to the date of the judgment in such action*" (emphasis added).

CedarBridge asserted conditional claims for recoupment but unilaterally reserved those issues for a separate hearing. The trial court allowed CedarBridge to postpone presenting evidence on the recoup-

ment issue until a later date, but ordered that the interest to be paid by Eason to CedarBridge be calculated as of the date of the judgment, rather than the date of the later hearing. The court held that equity mandated that Eason not be required to pay interest on the taxes during the interim because it was CedarBridge's decision to postpone the issue until a later date.

The trial court stated that interest on the taxes to be refunded to CedarBridge would be calculated as of the date of judgment because CedarBridge unilaterally decided to reserve the recoupment issue for a later hearing. While there is no case law that addresses this exact issue, the language of Section 140.600.1 clearly states that the amount of interest is to be calculated through the date of judgment. Furthermore, recoupment is based on principles of equity. *Boone Nat'l. Savs. & Loan Ass'n., F.A. v. Crouch,* 47 S.W.3d 371, 375 (Mo. banc 2001). It would not be equitable to require Eason to pay interest during the interim between the judgment date and the later recoupment hearing when CedarBridge could have presented evidence on this issue at trial. Point denied.

### III. CONCLUSION

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY and GEORGE W. DRAPER III, JJ., concur.