# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3690

_____

H & R Block Tax Services LLC, A Missouri limited liability company

*Plaintiff - Appellant*

v.

Deanna Franklin; Jerry Franklin; The Franklin 1989 Revocable Family Trust, A California revocable trust

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 14, 2012
Filed: September 7, 2012

_____

Before SMITH, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellant H & R Block Tax Services LLC ("H & R Block") appeals the district court's grant of summary judgment in favor of Appellees Deanna Franklin, Jerry Franklin, and the Franklin 1989 Revocable Family Trust (collectively "Franklin"). At issue is whether H & R Block had the right to terminate two franchise agreements between the parties where the agreements expressly stated that Franklin could

terminate at any time but only affirmatively allowed H & R Block to terminate for cause. The district court held the language was to be interpreted so that the franchise agreements would continue in perpetuity and that H & R Block could not extinguish the contracts without cause. Because we find under de novo review the language of the contracts did not unequivocally express the parties' intent for the contracts to last forever, we reverse.

## I. Background

H & R Block, a Missouri corporation, operates retail tax return preparation offices and franchises others to operate H & R Block offices under its service mark. Deanna and Jerry Franklin, both citizens of California, are trustees and beneficiaries of the Franklin 1989 Revocable Family Trust. Franklin has operated two H & R Block franchises in Yucaipa and Banning, California, since 1990.

The franchise agreements at issue were entered into between predecessors in interest of H & R Block and Franklin in 1975. In 1990, the agreements were assigned to Franklin. The agreements contain the following identical duration provision:

> The initial term of this Agreement shall begin on the date hereof and, unless sooner terminated by Block [for cause] as provided in paragraph 6, shall end five years after such date, and shall automatically renew itself for successive five-year terms thereafter (the "renewal terms"); provided, that Franchisee may terminate this Agreement effective at the end of the initial term or any renewal term upon at least 120 days written notice to Block prior to the end of the initial term or renewal term, as the case may be.

On June 3, 2010, H & R Block gave Franklin notice of its intention not to renew the franchise agreements when the five-year renewal terms were set to expire on December 1, 2010. H & R Block then filed an action in federal district court,

seeking a declaratory judgment that it could terminate the agreements and seeking damages and injunctive relief.[1]  Franklin filed a counterclaim seeking, *inter alia*, a declaratory judgment that H & R Block was not entitled to decline to renew the agreements.

The parties filed cross-motions for summary judgment on the issue framed by the parties' claims for declaratory judgment.  The district court granted summary judgment in favor of Franklin, concluding the franchise agreements are enforceable under Missouri law and that H & R Block did not have a right not to renew them.  The court found that the agreements contained an unequivocal expression of the parties' intent to enter into a perpetually enforceable contract.  The district court certified for interlocutory appeal the issue of whether the agreements were perpetually enforceable, and our court granted permission to appeal.

## II.  Analysis

"We review the district court's summary judgment order and its interpretation of state law *de novo*, applying the same standards applied by the district court." Bannister v. Bemis Co., 556 F.3d 882, 884 (8th Cir. 2009).  "Federal courts sitting in diversity apply the choice-of-law rules of the forum state."  Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009).  "Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is 'contrary to a fundamental policy of Missouri.'"  Id. (citation omitted).  The franchise agreements at issue include a choice-of-law provision stating that Missouri law shall apply.  Thus, we apply Missouri substantive law.

---

[1] H & R Block also filed a motion for a preliminary injunction to enjoin Franklin from breaching post-termination obligations, which was denied by the district court.  That ruling is not before us on appeal.

Missouri courts "are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation." Paisley v. Lucas, 143 S.W.2d 262, 270 (Mo. 1940) (citation omitted), overruled on other grounds by Novak v. Baumann, 329 S.W.2d 732, 733 (Mo. 1959). "The [Missouri] Supreme Court has made clear that, to be enforceable, a contract which purports to run in perpetuity must be adamantly clear that this is the parties' intent." Preferred Physicians Mut. Mgmt. Grp., Inc. v. Preferred Physicians Mut. Risk Retention Grp., Inc., 961 S.W.2d 100, 103 (Mo. Ct. App. 1998). Missouri courts "will only construe a contract to impose an obligation in perpetuity when the language of the agreement compels that construction," such that the parties' intention that the "contract's duration is for life . . . is clearly expressed in unequivocal terms." Paisley, 143 S.W.2d at 271 (citation omitted).

At the outset, we note that Franklin is arguably correct that the practical effect of each agreement here "would be to create a perpetual, never-ending contract." Preferred Physicians, 961 S.W.2d at 103. The duration provision in each contract indicates that the contract will renew "automatically" for successive five-year terms so long as Franklin does not terminate the agreement before automatic renewal.

Yet the dispositive issue in this case is not "whether the parties created a contract which had the effect of perpetual duration," id.; instead, it is whether the contracts' language unequivocally expresses the parties' intent that the agreements be perpetually *enforceable*. See id. To meet this standard, the duration provision must "unequivocally express an intent of the parties to create a perpetual, never-ending franchise agreement." Armstrong Bus. Servs., Inc. v. H & R Block, 96 S.W.3d 867, 877 (Mo. Ct. App. 2002).

The parties disagree as to whether an unequivocal expression of perpetual enforceability requires express words such as "everlasting," "eternally," or "for all time"—or whether such an intention may also be clearly implied from other aspects

-4-

of the contract.  See Paisley, 143 S.W.2d at 271 (finding employment contract was not perpetual where "duration of the contract was not fixed expressly or by implication"); Diffenderfer v. Bd. of President, 25 S.W. 542, 544 (Mo. 1894) (stating intent of perpetual duration may appear "by express term, or clearly by implication").

H & R Block argues the former position, contending the Franklin agreements are terminable because they do not include any language concerning duration, other than the five-year renewal provisions.  See, e.g., Armstrong, 96 S.W.3d at 877 (finding franchise agreements were not perpetually enforceable where there was an "absence of a clear and compelling declaration of the parties' intent to create perpetual franchise agreements" and where five-year automatic renewal provisions "preclude[d] any contention that the parties intended compulsory, perpetual relationships").

In response, Franklin contends no magic words of duration are necessary and that the parties' intent can be clearly implied from the terms of the contract.  Franklin points out that the agreements: (1) expressly give Franklin the sole right to terminate without cause, and (2) fail to include any provisions protecting Franklin if a right to terminate without cause is also afforded to H & R Block.  Thus, Franklin argues, the parties must have intended perpetually enforceable agreements, reserving to Franklin the exclusive right to terminate in order to balance the business relationship.  See Armstrong, 96 S.W.3d at 878 (recognizing law in Missouri reflects policy of protecting franchisees at termination of franchise relationships because of the unique nature of franchise agreements).

The district court found Franklin's arguments convincing, holding the franchise agreements contained "unequivocal expressions of the parties' intent to enter into perpetual contracts until the franchisee chooses to terminate the contracts or they are terminated by H & R Block for cause."  H & R Block Tax Servs. LLC v. Franklin, No. 10-01165, slip op. at 5 (W.D. Mo. Oct. 19, 2011).  The court reasoned that,

unlike the agreements in Armstrong, where both parties were given a say in whether to terminate the agreements, the Franklin agreements allowed only the franchisee to determine when to end them:

> By only giving th[e] right to terminate without cause to the franchisee, H & R Block has clearly implicated that it intends to remain in franchise agreements with the franchisee until the franchisee chooses to end them. Missouri courts have not described the "magic language" required to create a perpetual contract and the Court believes that these duration provisions are clear and compelling declarations of the parties' intent to enter into perpetual franchise agreements until the franchisee elects to terminate the agreements or breaches the contracts.

Franklin, slip. op. at 6.

We find that the district court erred in its assessment of the franchise agreements. In order to find an intent that a contract be enforced perpetually, the Missouri Supreme Court has set the bar high: there must be an *unequivocal* expression that the contract last forever. Paisley, 143 S.W.2d at 270-71; see Blacks Law Dictionary 1667 (9th ed. 2009) (defining "unequivocal" as "[u]nambiguous; clear; free from uncertainty"). The parties agreed at oral argument, and our own investigation is in accord, that the only Missouri case where this high hurdle has been met analyzed a contract with the word "perpetually" in the agreement. See Blackmore v. Boardman, 28 Mo. 420, 1859 WL 6632, at *1 (Mo. 1859). No similar express language appears in the Franklin agreements.

In the absence of any express language of the parties' intent as to duration, we do not agree with the district court that an eternally enforceable obligation is otherwise clearly implied. To the contrary, "the clause providing for automatic renewal contradicts an intention that the contract would last forever," Armstrong, 96 S.W.3d at 877, because "[a] contract that runs forever has no need for renewal."

-6-

<u>Preferred Physicians</u>, 961 S.W.2d at 104. In this diversity case, we are bound by Missouri law, and simply put, no term in the contracts clearly demonstrates that the parties intended for their relationship to continue in perpetuity.

Based on Missouri law, we are unable to agree with Franklin's contention that the contracts' language unequivocally expresses the parties' intent that the contracts be perpetually enforceable. The district court erred in reading such an intent into the contracts.

## III. Conclusion

We reverse. The case is remanded for further disposition in accordance with this opinion.

SMITH, Circuit Judge, dissenting.

I respectfully dissent from the majority's holding that "the language of the contracts did not unequivocally express the parties' intent for the contracts to last forever." In doing so, the majority discounts two clearly applicable Missouri contract-interpretation principles in favor of an arguable public policy exception. I would apply traditional Missouri contract principles and affirm the district court's determination that H & R Block drafted and entered into enforceable, perpetual agreements with Franklin.

"The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent." *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. 2005) (en banc). Thus, "[t]he intent of the parties to a contract is presumed to be expressed by the ordinary meaning of the contract's terms." *Id.* But, "[i]f ambiguous, [the contract] will be construed against the drafter, as is the case with other contracts under Missouri law."

*Id.* Here, we should interpret the contracts "to ascertain the intent of [H & R Block and Franklin] and to give effect to that intent." *Id.* "[Missouri] law discourages perpetuities, and does not favor covenants for continued renewals, but, when they are clearly made, their binding obligation is recognized, and will be enforced." *Diffenderfer*, 25 at 544.

On appeal, H & R Block argues that the district court erred in finding that the franchise agreements with Franklin are enforceable, perpetual contracts. Specifically, it argues that the district court ignored Missouri's strong public policy against interpreting automatically-renewable contracts to be perpetual agreements.

The agreements state in relevant part:

> The initial term of this Agreement shall begin on the date hereof and, unless sooner terminated by [H & R] Block [for cause] as provided in paragraph 6, shall end five years after such date, and shall automatically renew itself for successive five-year terms thereafter (the "renewal terms"); provided, that Franchisee may terminate this Agreement effective at the end of the initial term or any renewal term upon at least 120 days[,] written notice to [H & R] Block prior to the end of the initial term or renewal term, as the case may be.

As the district court noted, the franchise agreements in this case expressly allow the franchisee, Franklin, to terminate the agreements upon 120 days' notice at the end of any five-year period. Conversely, the agreements only allow H & R Block to terminate the agreements for cause. H & R Block could have included a reciprocal at-will-termination provision in the franchise agreements but did not. Rather, it expressly limited its own right to cancel the agreements by requiring cause. The franchise agreements' plain language expressly contemplates continuous renewals. In Missouri, "[t]he cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Peterson v. Cont'l Boiler*

*Works, Inc.*, 783 S.W.2d 896, 901 (Mo. 1990) (en banc) (quotation and citation omitted). Because the franchise agreements expressly grant Franklin an exclusive right to terminate the agreements upon notice and only permit H & R Block to terminate for cause, in my view, I would not rewrite the contract to give H & R Block a contract right that it did not bargain to receive based on a public-policy exception. *Monterosso v. St. Louis Globe-Democrat Publ'g Co.*, 368 S.W.2d 481, 487 (Mo. 1963) ("The courts cannot make contracts for litigants or rewrite contracts by judicial interpretation." (internal citation omitted)).

By rewriting the franchise agreements, the majority not only gives H & R Block a right that it did not have under the contracts, but it also takes away rights that Franklin had as a franchisee. In the agreements, H & R Block included a clause that requires Franklin to relinquish to H & R Block customer information gained during the franchise period, and abide by a non-compete agreement upon termination. That provision states:

> Franchisee recognizes that the services to be furnished to Franchisee by [H & R] Block in connection with Franchisee's use of the licensed marks and the reputation and goodwill associated with such marks, will be principal factors in obtaining customers for Franchise, and Franchisee further recognizes [that] he will acquire confidential business information of [H & R] Block and acknowledges that all such information constitutes trade secrets of [H & R] Block, the disclosure of which would cause it substantial loss. Accordingly, in the event of termination of this Agreement for any reason whatsoever, or upon its transfer or assignment as permitted herein, all rights of Franchisee hereunder shall thereupon terminate, and Franchisee shall . . . immediately return to [H & R] Block copies of all customer tax returns and all materials, data and property of [H & R] Block including all sets and copies of the Manual and all books, records, customer lists, customer names, forms and files, and shall assign whatever right, title[,] or interest Franchisee may have in and to all leases covering equipment or real property then used in connection with Franchisee's tax return

preparation operations as [H & R] Block may require . . . . [H & R] Block shall thereafter have the sole right and privilege to use any information appearing on file copies of customer tax returns in connection with the preparation of subsequent years' tax returns for such customers.

By allowing H & R Block to terminate the agreements at will, the majority punishes Franklin and leaves him without contractual protection from a potentially abusive franchisor. Under the majority's view of the agreements, H & R Block could receive the benefit of Franklin's work and simply decide to terminate the contracts without any compensation to Franklin. These contracts contain no buy-out provision as in *Armstrong*.

We should not presume that H & R Block erroneously drafted the contracts. Giving Franklin an exclusive right to terminate the relationship makes sense in light of "the situation of the parties." *Paisley*, 143 S.W.2d at 270. Continually renewable agreements give incentives to prospective franchisees to enter a business with the assurance of predictably continuing in that business unless they fail to meet their obligations under the agreement.

In reaching the conclusion that H & R Block and Franklin did not enter into an enforceable perpetual agreement, the majority relies on the reasoning of two Missouri Appellate Court decisions, *Preferred Physicians* and *Armstrong*. The agreements in those cases are materially distinguishable from the agreements present here. Unlike in those cases, the agreements here expressly grant the franchisee an exclusive right to terminate the agreements at will upon sufficient notice. H & R Block, the agreements' drafter, reserved no such right. Rather, the agreements in this case only allow H & R Block to terminate the agreements for cause. In those cases the courts relied, in part, on the conclusion that one party could coerce another party into continuing the agreement into perpetuity. *See Armstrong*, 96 S.W.3d at 878 ("To enforce the automatic renewal provision would enable one party to coerce the other

into a perpetual cycle of five-year obligations and would render the five-year provisions of the duration provision meaningless."); *Preferred Physicians*, 961 S.W.2d at 103 ("Management Group, under a literal reading of the contract, could have coerced Risk Retention Group, against its will, into another five-year period of obligations. This is hardly mutual assent, and we refuse to enforce the contract's renewal provisions without assurance of mutual assent."). In both of those cases, the automatic renewal provision seemed more a matter of oversight than intention. In this case, on the other hand, the parties expressly contracted for that result. H & R Block purposely drafted a franchise agreement that allowed the franchisee to maintain perpetually renewable contracts with H & R Block except upon the franchisee's breach. If this has proven unwise, H & R Block should not be rescued from its imprudence by a public policy exception to Missouri contract law.

Moreover, the majority overlooks a recent case deciding the same issue under similar facts and law. In *Southern Wine & Spirits of Nevada v. Mountain Valley Spring Co.*, this court found that "[t]he Agreement clearly provides for a perpetual duration unless one of two specific events occurs—mutual consent to end the Agreement . . . or default." 646 F.3d 526, 532 (8th Cir. 2011). We reasoned that "[i]f we were to interpret the Agreement to be terminable at will by either party, . . . we effectively would nullify the contractual provisions regarding the conditions for termination—a result rejected by Nevada law." *Id.* (footnote omitted).[2]

---

[2]Nevada law is similar to Missouri law. In reaching our conclusion in *Southern Wine and Spirits*, we relied on the Nevada Supreme Court's opinion in *Bell v. Leven*, 90 P.3d 1286 (Nev. 2004). In *Bell*, the Nevada Supreme Court noted "that as a matter of public policy, courts should avoid construing contracts to impose a perpetual obligation. However, when the language of a contract clearly provides that the contract is to have a perpetual duration, the courts must enforce the contract according to its terms." *Id.* at 1288. In noting this rule, the Nevada Supreme Court cited favorably *Preferred Physicians*. *Id.* at 1288 n.4.

Finally, interpreting these contracts to be enforceable, perpetual agreements does not raise serious public policy concerns. These are not adhesion contracts or the obvious result of negligent drafting. Rather, H & R Block drafted the contracts and specifically afforded Franklin the right to terminate the agreements at will upon notice, while giving itself only the right to terminate for cause. Further, the contracts do not place burdensome affirmative obligations on H & R Block. Franklin simply uses H & R Block's trademark and materials, but prepares the tax returns himself. H & R Block receives passive income from Franklin's efforts. Finally, if Franklin does not comply with the agreements, H & R Block can terminate the agreements for cause.

Because I would affirm the district court's well-reasoned decision, I respectfully dissent.

_____