**UNITED ASSET MANAGEMENT TRUST COMPANY, Trustee for Coast to Coast Holding Trust, Appellant,**

v.

**Keith A. CLARK, et al., Respondents.**

**No. WD 71589.**

Missouri Court of Appeals,
Western District.

Nov. 30, 2010.

As Modified on Denial of Rehearing
Feb. 1, 2011.

Application for Transfer Denied
March 29, 2011.

Eric D. Roby, for Appellant.

Alan B. Gallas, for Respondent Clark.

Betsy A. Blake, for Respondent Shipley.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

United Asset Management Trust Company, trustee for the Coast to Coast Holding Trust ("the Trust"), appeals from a judgment entered in the Circuit Court of Cass County concluding that a piece of property formerly held by the Trust had been properly transferred by the tax collector for Cass County to Keith and Crystal Clark by means of a tax sale and collector's deed.

Prior to July 20, 1992, the property at issue was owned by Norma and Clinton Tracy. On that date, the Tracys conveyed the property to the Trust. The address provided to the county for the Trust was a post office box in Grandview, Missouri. No information regarding the identity of the trustee or beneficiaries of the trust was recorded with the county.

At some point, the Trust stopped maintaining the post office box. After the Trust failed to pay property taxes on the property in 2003 and 2004, the county tax

collector mailed the Trust multiple delinquency notices to the post office box address. Subsequently, in April and July 2005, the tax collector mailed to the Trust, at the post office box address, notices that the property would be sold at a tax sale on August 22, 2005, if the delinquent property taxes were not paid. The postal service returned all these letters to the tax collector as undeliverable with no forwarding address. The tax collector published notice of the tax sale of the property in the Star Herald on July 21, July 28, and August 4, 2005.

On August 22, 2005, the Clarks purchased the tax lien on the property from the tax collector for $2,600.00 in its first offering at auction. On August 24, 2005, the tax collector sent notice to the Trust at the post office box address that the property had been sold at the tax sale. The postal service returned that letter as undeliverable with no forwarding address.

On June 14, 2006, Mr. Clark sent a certified letter to the Grandview post office box address notifying the Trust that the Clarks had purchased the County's tax lien on the property at the tax sale and that they were preparing to file for a collector's deed. The letter stated, "YOU NEED TO CONTACT THE CASS COUNTY COLLECTORS OFFICE WITHIN THE 90 (NINETY) DAYS FROM THE DATE OF THIS LETTER TO REDEEM THIS PROPERTY OTHERWISE I WILL FILE FOR THE COLLECTOR'S DEED." That letter was returned to the Clarks by the postal service as undeliverable with no forwarding address. Prior to sending the notice, the Clarks had searched directory assistance and the internet trying to find a better or more recent address for Appellant, all to no avail. After the notice was returned undeliverable, the Clarks continued to try to locate Appellant's address. Keith Clark found the company that maintained the Grandview post office box address and requested Appellant's new or forwarding address. He was told that the information could not be given to him. On September 12, 2006, Mr. Clark filed an affidavit with the tax collector stating that he and Mrs. Clark had complied with the notification requirements of § 140.405 [1] and requested a collector's deed be issued. That same day, the tax collector issued a collector's deed for taxes to the Clarks, and the deed was recorded at the county recorder's office by them.

Subsequently, Mr. Tracy's son noticed Mr. Clark mowing the property one day and was informed by Mr. Clark that the Clarks had purchased the property at the August 22, 2005 tax sale and owned the property. Mr. Tracy's son provided this information to Mr. Tracy, a trust manager for the Coast to Coast Holding Trust, who in turn informed the Trustee of the tax sale.

On October 6, 2006, United Asset Management Trust Company, acting in its capacity as trustee for the Coast–To–Coast Holding Trust, filed a petition against the tax collector and the Clarks seeking to set aside the tax deed and quiet title to the property in favor of the Trust. The Trustee claimed that notice by the tax collector was insufficient because the tax bill notices of the sale were returned as undeliverable by the postal service, the notice of sale was only published for one week, and a notice of tax sale was not posted on the property. The Trustee also claimed that the notice provided by the Clarks was deficient because the notice was returned as undeliverable and the Clarks took no additional steps to provide the notice to the Trust.

1. All statutory references are to RSMo Cum. Supp.2009, unless otherwise noted.

On November 11, 2006, the Clarks filed a counterclaim to quiet title in the property.

The case was tried to the court on August 11, 2009. Subsequently, the trial court entered its judgment in favor of Respondents and quieted title in favor of the Clarks. The court found that both the tax collector and the Clarks had properly mailed notice to the Trust at its last known mailing address and that no other reasonable means were available to them to provide additional notice. The Trustee brings two points on appeal from that judgment.

In its first point, the Trustee claims the trial court erred in entering judgment in favor of the Clarks because the Clarks' notice failed to comply with the mandatory notice requirements of § 140.405[2] in that it incorrectly stated the amount of time the Trustee had to redeem the property and failed to notify the Trustee that it would be forever barred from redeeming the property if it did not do so by that date. In Point II, the Trustee asserts the trial court erred in entering judgment for the Clarks because the Collector and the Clarks denied the Trust's due process right to notice under the Fourteenth Amendment to the United States Constitution in that they failed to take additional reasonable steps to notify the Trust that its real property was going to be taken and sold for delinquent taxes when the Collector and the Clarks knew that the tax sale notices and the redemption notice mailed by the Clarks to the Trust were returned as undeliverable.

### Standard of Review

"In a judge-tried case, we will affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously applies the law." *CedarBridge, LLC v. Eason,* 293 S.W.3d 462, 466 (Mo.App. E.D. 2009). In making that determination, "[w]e must view the evidence and the inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence." *Id.* Our review related to questions of law, however, is *de novo,* and no deference is afforded to the trial court's legal conclusions. *Amond v. Ron York & Sons Towing,* 302 S.W.3d 708, 711 (Mo.App. E.D.2009).

### Historical Background

To fully understand Appellant's claim that the Clarks' notice did not comply with the requirements of § 140.405 and that the Clarks, therefore, lost all interest in the property, some background is in order.

Chapter 140 of the Revised Statutes of Missouri is commonly known as the Jones–Munger Act. *M & P Enters., Inc. v. Transamerica Fin. Servs.,* 944 S.W.2d 154, 156 (Mo. banc 1997). It provides for the annual sale of real property on which taxes are delinquent and unpaid. § 140.150.1. In advance of the sale, which occurs on the fourth Monday in August, § 140.150.1, the collector must publish a list of the property to be sold once a week for three consecutive weeks, the last publication date being at least fifteen days prior to the date of sale. § 140.170.1. The statutory scheme of the Jones–Munger Act contemplates the possibility that the property might not sell at the tax sale. Accordingly, if a tract does not sell in the year it is first offered, a second offering is made the next year. § 140.240.1. At a first or second offering tax sale, the property may only be sold if an adequate bid is received, that being "a

---

**2.** Chapter 140, including § 140.405, was extensively revised and amended by House Bill 1316 adopted by the Missouri General Assembly in 2010. All relevant events in this case occurred long before H.B. 1316 was adopted or became law. Therefore, this opinion addresses the pre–2010 statutes.

sum equal to the delinquent taxes thereon with interest, penalty and costs." § 140.240.1. If an adequate bid is not received in the second year, it is offered again in the third year and sold to the highest bidder. § 140.250.1. At the third offering, counties are permitted to bid and buy to prevent tax losses resulting from inadequate bids. § 140.260.1.

The purchaser at a first or second offering tax sale is not given a deed directly, but rather receives a certificate of purchase. § 140.290.1. During the one year immediately following the tax sale, § 140.340.1 provides that "[t]he owner or occupant ... or any other persons having an interest therein, may redeem the [property] at any time" by paying the collector the purchase price plus the costs of sale and interest as provided therein. From the date of the sale until expiration of the statutory one year period of redemption, the purchaser " 'is vested with an inchoate or inceptive interest in the land subject to the absolute right of redemption in the record owner in whom the title remains vested.' " *M & P Enters., Inc.*, 944 S.W.2d at 157 (quoting *State ex rel. Baumann v. Marburger*, 353 Mo. 187, 182 S.W.2d 163, 165 (1944)). Thereafter, "[i]f no person shall redeem the lands sold for taxes within one year from the sale, at the expiration thereof, and on production of certificate of purchase, the collector ... shall execute to the purchaser ... a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee simple...." § 140.420. Pursuant to § 140.410, the purchaser must cause the deed to be executed and placed of record within two years of the date of sale. Read in conjunction with § 140.420, this effectively means the purchaser must obtain the collectors deed and record it during the one year period beginning one year after the date of sale.

While § 140.340.1 specifies a one year period of redemption for first and second offering sales beginning on the date of sale, our Supreme Court has construed §§ 140.340.1, 140.360.2, and 140.420 to mean that up until the purchaser presents the certificate of purchase to the collector, the original property owner may still redeem the property and destroy the power of the purchaser to obtain a deed. *Hobson v. Elmer*, 349 Mo. 1131, 163 S.W.2d 1020, 1023 (1942). Accordingly, the period of redemption extends beyond the expiration of the one year period following the date of sale and continues until the purchaser actually secures the collectors deed.

At this juncture, it is important to recognize that there are significant differences between first and second offering tax sales and third offering tax sales. From 1939 until 1998, there was no redemption period for third offering tax sales. *M & P Enters., Inc.*, 944 S.W.2d at 157–58; § 140.250.1. In *M & P Enters.*, the Missouri Supreme Court held that "[b]ecause chapter 140 does not allow lien holders to redeem property after a third tax sale, such sale cannot, consistent with due process, extinguish the lien of the holder of a recorded deed of trust unless the lien holder is given notice by mail or personal service before the sale." 944 S.W.2d at 155. In apparent response to the holding in *M & P Enters.*, § 140.250, relating to third offering tax sales, was amended by the legislature in 1998. Section 140.250.1, after the 1998 amendment, reads:

**140.250. Third offering of delinquent lands and lots—subsequent sale—collector's deed**

1. Whenever any lands have been or shall hereafter be offered for sale for delinquent taxes, interest, penalty and costs by the collector of the proper county for any two successive years and no person shall have bid therefor a sum

equal to the delinquent taxes thereon, interest, penalty and costs provided by law, then such county collector shall at the next regular tax sale of lands for delinquent taxes sell same to the highest bidder, and there shall be *a ninety-day period of redemption from such sales as specified in section 140.405.*

The emphasized language was substituted for "no period of redemption from such sales" in the previous version.

Section 140.405 was first adopted by the legislature in 1984, in response to the Missouri Supreme Court's holding in *Lohr v. Cobur Corp.*, 654 S.W.2d 883, 886 (Mo: banc 1983), "that where a deed of trust naming the deed of trust beneficiary is publicly recorded, notice by publication alone is insufficient and must be supplemented by notice mailed to the beneficiary's last known available address or by personal service." As noted by the Missouri Supreme Court in *M & P Enters., Inc.:*

> Section 140.405, RSMo 1986 (repealed), as enacted in 1984, stated:
>
> **140.405. Purchaser of property at delinquent land tax auction, deed issued to, when—loss of interest, when.**—Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until he meets with the following requirement or until he makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on said real estate. At least ninety days prior to the date when he is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem his security or claim. No-

tice shall be sent by certified mail to any person at his last known available address. Failure of the purchaser to comply with this provision shall result in his loss of all interest in said real estate.

The 1984 legislation (§§ 140.250 and 140.405, RSMo 1986) was construed in *Russo v. Kelm*, 835 S.W.2d 568 (Mo.App. 1992), so as to require the purchaser at a third offering tax sale to conduct a title search. *Id.* at 570.

However, § 140.405 was amended in 1987 to provide as follows:

> **140.405. Purchaser of property at delinquent land tax auction, deed issued to, when—loss of interest, when.**—Any person purchasing property at a delinquent land tax auction, *other than persons purchasing property at a third offering for which there is no period of redemption pursuant to section 140.250,* shall not acquire the deed to the real estate, as provided for in section 140.420, until he meets with the following requirements or until he makes an affidavit that a title search has revealed no *publicly recorded* deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when he is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem his *publicly recorded* security or claim. Notice shall be sent by certified mail to any such person at his last known available address. Failure of the purchaser to comply with this provision shall result in his loss of all interest in the real estate.

(Emphasis added.) The emphasized language was added by the 1987 legislation.

*1987 Mo. Laws 542–43.* As noted by the court in *Russo*, the 1987 amendment made it clear that the title search and redemption procedures of § 140.405 no longer apply to third tax sales. 835 S.W.2d at 570 n. 1.

*M & P Enters., Inc.*, 944 S.W.2d at 158.

Section 140.405 has been amended three more times since 1987, in 1996, 1998, and 2003. As is apparent from the preceding discussion, § 140.405 is the product of an evolving understanding of the type of notice that due process requires in order for the government to extinguish the interests of landowners, lien holders, and others when seizing private property to enforce tax laws and to whom such notice must be given.

The 1996 and 1998 amendments to § 140.405 are part of that evolution.[3] In 1996, the third sentence of § 140.405 was amended to read: "Notice shall be sent by certified mail to any such person,[4] **including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale,** at such person's last known available address."[5] (Emphasis added.) The 1998

amendment of § 140.250.1 and § 140.405 created a ninety (90) day period of redemption in third offering tax sales for "anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the property." This amendment was made in direct response to the Missouri Supreme Court's decision in *M & P Enters., Inc.*, which held that the version of § 140.250 and § 140.405 then in effect (the version last amended in 1987) did not provide a right of redemption to lien holders following a third offering tax sale, and that holders of a publicly recorded deed of trust were entitled to notice mailed to their last known available address or by personal service in order to extinguish their lien on real estate. *M & P Enterprises, Inc.*, 944 S.W.2d at 158–60. Accordingly, the 1998 amendment to § 140.250.1 and § 140.405 created a redemption period for such lien holders and required the purchaser at a third offering tax sale to notify the lien holders of their right to redeem their publicly recorded security or claim.

### *Discussion and Analysis*

 Resolution of Appellant's first point on appeal is dependent upon our

---

3. The 2003 amendment, however, merely provides an alternate means of compliance with the statutory requirements. The amendment added a new last sentence to the statute, which states: "If the county collector chooses to have the title search done then the county collector must comply with all provisions of [this section], and may charge the purchaser the cost of the title search before giving the purchaser a deed pursuant to section 140.420." This provision affords the county collector the option to comply with the requirements of the statute and to pass along to the purchaser the costs the collector incurs in doing so.

4. This amendment also modified the language of the statute to make it gender neutral, i.e., "such person" rather than "he."

5. Our Supreme Court in considering the meaning of "one claim" for purposes of Rule 74.01 has defined "claim" as " 'the aggregate

of operative facts which give rise to a right enforceable in the courts.' " *Comm. for Educ. Equality v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994) (quoting *McIntyre v. First Nat. Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir.1978); *Rhodes v. Jones*, 351 F.2d 884, 886–87 (8th Cir.1965); *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339, 341 (2nd Cir.1963)). A "publicly recorded ... claim," § 140.405, then, would certainly include being the record owner of the property. In other words, such person has a publicly recorded claim of ownership subject only to the lien for taxes, and has a right of redemption, and as such has "a right enforceable in the courts." *Id.* Thus, the 1996 amendment was intended to clarify that notice of the right of redemption must be given to record owners as well as those holding deeds of trust, mortgages, leases, liens, or other claims.

interpretation of § 140.405. Appellate courts interpret statutes in such a manner as to "give effect to legislative intent as reflected in the plain language of the statute." *Keylien Corp. v. Johnson*, 284 S.W.3d 606, 609 (Mo.App. E.D.2009). We construe statutes consistent with the obvious purpose of the legislature. *Hyde v. Dep't of Mental Health*, 200 S.W.3d 73, 76 (Mo.App. W.D.2006). In ascertaining that purpose, it is appropriate for the court to consider the history of the statute. *In re Estate of Hayden*, 258 S.W.3d 505, 508 (Mo.App. E.D.2008). Similarly, a particular statutory phrase will not be read in isolation. *Keylien Corp.*, 284 S.W.3d at 609. Rather, "we construe the provisions of a legislative act together and read a questioned phrase in harmony with the entire act." *Id.* at 609–10. We likewise avoid interpretations that lead to unreasonable, oppressive or absurd results. *Wright–Jones v. Johnson*, 256 S.W.3d 177, 181 (Mo.App. E.D.2008).

Appellant generally makes two arguments in challenging the sufficiency of the notice under § 140.405. First, Appellant contends that the Clarks' notice incorrectly stated that Appellant had ninety days from the date of the notice in which to redeem and that it failed to inform Appellant that it would be forever barred from redeeming the property if it failed to do so within the statutory period. Alternatively, Appellant asserts that, even if the ninety day provision in § 140.405 only applies to third offering tax sales, the notice still failed to comply in that it did not inform Appellant that it had one year from the date of the sale in which to redeem and that Appellant would be forever barred if it failed to timely redeem the property. As will be seen, Appellant's contentions are based on a misapprehension of what the statute states and requires.

The historical background of § 140.405 discussed *supra* is essential to proper interpretation of the statute. And in light of that historical background, it is helpful to parse the various provisions of the statute, breaking the statute down into its various relevant subparts:

**Subpart I:** Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate.

**Subpart II:** At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

**Subpart III:** If any real estate is purchased at a third-offering tax auction and has a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate, the purchaser of said property at a third-offering tax auction shall notify anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate pursuant to this section.

**Subpart IV:** Once the purchaser has notified the county collector by affidavit that proper notice has been given, anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the property shall have ninety days to redeem said property or be forever barred from redeeming said property.

**Subpart V:** If the county collector chooses to have the title search done then the county collector must comply with all provisions of this section, and may charge the purchaser the cost of the title search before giving the purchaser a deed pursuant to section 140.420.[6]

6. As observed, *supra*, in note 2, H.B. 1316 adopted in 2010 substantially amended and revised § 140.405. For comparative purposes, the new version of the statute provides:

140.405.1. Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.250 or 140.420, until the person meets the requirements of this section, except that such requirements shall not apply to post-third year sales, which shall be conducted under subsection 4 of section 140.250. The purchaser shall obtain a title search report from a licensed attorney or licensed title company detailing the ownership and encumbrances on the property. Such title search report shall be declared invalid if the effective date is more than one hundred twenty days from the date the purchaser applies for a collector's deed under section 140.250 or 140.420.

2. At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify the owner of record and any person who holds a publicly recorded unreleased deed of trust, mortgage, lease, lien, judgment, or any other publicly recorded claim upon that real estate of such person's right to redeem the property. Notice shall be sent by both first class mail and certified mail return receipt requested to such person's last known address available address. If the certified mail return receipt is returned signed, the first class mail notice is not returned, the first class mail notice is refused where noted by the United States Postal Service, or any combination thereof, notice shall be presumed received by the recipient. At the conclusion of the applicable redemption period, the purchaser shall make an affidavit in accordance with subsection 4 of this section.

3. If the owner of record or any other publicly recorded claim on the property intends to transfer ownership or execute any additional liens or encumbrances on the property, such owner shall first redeem such property under section 140.340. The failure to comply with redeeming the property first before executing any of such actions or agreements on the property shall require the owner of record or any other publicly recorded claim on the property to reimburse the purchaser for the total bid as recorded on the certificate of purchase and all the costs of the sale required in sections 140.150 to 140.405.

4. In the case that both the certified notice return receipt card is returned unsigned and the first class mail is returned for any reason except refusal, where the notice is returned undeliverable, then the purchaser shall attempt additional notice and certify in the purchaser's affidavit to the collector that such additional notice was attempted and by what means.

5. The purchaser shall notify the county collector by affidavit of the date that every required notice was sent to the owner of record and, if applicable, any other publicly recorded claim on the property. To the affidavit, the purchaser shall attach a copy of a valid title search report as described in subsection 1 of this section as well as completed copies of the following for each recipient:

(1) First class mail;

(2) Certified mail notice;

(3) Addressed envelopes as they appeared immediately before mailing;

(4) Certified mail receipt as it appeared upon its return; and

(5) Any returned regular mailed envelopes. As provided in this section, at such time the purchaser notifies the collector by affidavit that all the ninety days' notice requirements of this section have been met, the purchaser is authorized to acquire the deed, provided that a collector's deed shall not be acquired before the expiration date of the redemption period as provided in section 140.340.

6. If any real estate is purchased at a third-offering tax auction and has a publicly

When broken down into these various sub-parts, it is evident that some of the provisions of the statute refer to all tax sales (first, second, and third offering sales), while others apply only to first and second offering sales, and still others apply only to third offering sales. We address each sub-part in order.

Subpart I is essentially a preface. While still worded as it was before the 1998 amendments, it seems clear that it is applicable to the remainder of the section.[7]

Subpart II, on the other hand, clearly relates only to first and second offering tax sales. Subpart II requires the purchaser at a first or second offering tax sale to notify lien holders of record that they have a right to redeem their publicly recorded security interest or claim. The notice must be sent by certified mail to the lien holders, including "the publicly recorded owner of the property" immediately prior to the sale, at all such persons' last known available addresses. If the purchaser fails to comply with this requirement, the purchaser loses all interest in the real estate and is precluded from receiving a deed for the property purchased at the tax sale.

Notably, Subpart II does not spell out what the contents of the notice to the lien holders or the owner must contain aside from requiring that they be notified of their "right to redeem" their "publicly recorded security or claim." It is likewise noteworthy that Subpart II contains no provision relating to the purchaser proving or providing evidence of compliance with the notice requirement.

The 1998 amendment added Subparts III and IV. Subpart III relates solely to third offering tax sales and provides: "If any real estate is purchased at a third-offering tax auction and has a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate, the purchaser of said property at a third-offering tax auction shall notify anyone with a publicly deed of trust, mortgage, lease, lien or claim upon the real estate pursuant to this section." As noted *supra*, § 140.250.1 was amended in 1998 to create a ninety

recorded unreleased deed of trust, mortgage, lease, lien, judgment, or any other publicly recorded claim upon the real estate under this section, the purchaser of said property shall within forty-five days after the purchase at the sale notify such person of the person's right to redeem the property within ninety days from the postmark date on the notice. Notice shall be sent by both first class mail and certified mail return receipt requested to such person's last known available address. The purchaser shall notify the county collector by affidavit of the date the required notice was sent to the owner of record and, if applicable, any other publicly recorded claim on the property, that such person shall have ninety days to redeem said property or be forever barred from redeeming said property.

7. If the county collector chooses to have the title search done then the county collector may charge the purchaser the cost of the title search before giving the purchaser a deed pursuant to section 140.420.

8. If the property is redeemed, the person redeeming the property shall pay the costs incurred by the purchaser in providing notice under this section. Recoverable costs on any property sold at a tax sale shall include the title search, postage, and costs for the recording of any certificate of purchase issued and for recording the release of such certificate of purchase and all the costs of the sale required in sections 140.150 to 140.405.

9. Failure of the purchaser to comply with this section shall result in such purchaser's loss of all interest in the real estate.

7. This is so because Subparts II and III both deal generally with notices to be sent to lienholders. Subpart I eliminates the need for such notices if the purchaser "makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate." Thus, if there are no lienholders or claimants, there is no one to whom the notices required by Subparts II and III can be sent.

(90) day period of redemption for third offering tax sales "as specified in § 140.405." Thus, the amendment of § 140.250.1 and § 140.405 in 1998 created the ninety (90) day period of redemption for third offering tax sales and set forth that notice must be given to lien holders of that right of redemption.

Subpart IV was also added to § 140.405 in 1998. It provides that "[o]nce the purchaser has notified the County Collector by affidavit that proper notice has been given, anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the property shall have ninety (90) days to redeem said property or be forever barred from redeeming said property." Subpart IV, like Subpart III, is applicable only to third offering tax sales. This is evident for several reasons. First, the period of redemption for first and second offering tax sales is one (1) year pursuant to § 140.340.1. It would, therefore, make no sense to say that the lien holder has ninety (90) days from the date of the affidavit in which to redeem in the first or second offering tax sale setting. On the other hand, § 140.250 specifies that there is a "ninety-day period of redemption" for third offering tax sales. Thus, the latter part of the sentence relating to lien holders having a ninety-day period of redemption can only be applicable to third offering tax sales.

The filing of the affidavit by the purchaser with the County Collector confirming that proper notice has been given serves two purposes. First, it evidences of record the purchasers compliance with § 140.405's requirement to send notice to lien and claim holders. And second, it establishes of record the beginning of the ninety-day period of redemption granted to lien holders in third offering tax sales as provided in § 140.250.1.

The foregoing interpretation of the statute is generally consistent with the interpretation of § 140.405 in recent cases. However, some of those cases discuss issues not addressed above. For instance, in *Keylien Corp.,* the Court interpreted the meaning of the phrase "right to redeem" as it appears in § 140.405. 284 S.W.3d at 609. It noted that in third offering tax sales there is a ninety-day period of redemption that begins on the date that the affidavit is filed with the collector, but also observed that first and second offering tax sales have a one-year period of redemption that begins on the date of the tax sale pursuant to § 140.340.1. *Id.* at 611. *Keylien* then sought to reconcile language from two prior Eastern District cases, *Valli v. Glasgow Enterprises, Inc.,* 204 S.W.3d 273 (Mo.App. E.D.2006), and *Glasgow Enterprises, Inc. v. Brooks,* 234 S.W.3d, 407 (Mo.App. E.D. 2007),[8] stating:

> When *Valli* and *Brooks* held that the notice of the right to redeem must state that the recipient had ninety days from date of the notice to the collector by affidavit to redeem, they were indicating what a notice in a third offering tax sale had to contain in order to comply with the requirement that the notice inform of the right to redeem. However, first and second offering tax sales have a one-year redemption period that begins on the date of the tax sale. Therefore, for a notice in a first or second offering tax sale to accurately inform the recipient of the right to redeem, the notice must indicate that the recipient has one-year from the date of the tax sale to redeem.

---

8. Appellant relies heavily on *Valli* and *Glasgow* as support for its arguments in Point I. As *Keylien* points out, however, those cases addressed third offering tax sales, whereas Appellant's was a first offering tax sale. 284 S.W.3d at 613.

*Id.* at 613 (citations omitted). Thus, *Keylien* held that the notice required by § 140.405 must inform recipients not merely of their right to redeem, as required by express wording of the statute, but also provide legal advice as to what period of redemption exists depending on what type of tax sale was conducted. *Id.* In other words, according to *Keylien,* the notice sent after a first or second offering tax sale must inform those receiving it that they have a right to redeem during the one-year after the date of the tax sale.[9] *Id.* On the other hand, *Keylien* asserts that the notice of the right to redeem after the third offering tax sale must inform the recipients that they have ninety-days from the date the purchaser files the affidavit with the County Collector in which to redeem. *Id.* As noted *supra,* § 140.405 nowhere provides that the notices required by the statute must state anything other than that the recipient has a "right to redeem."

*Keylien* was followed by *CedarBridge, LLC v. Eason,* 293 S.W.3d 462 (Mo.App. E.D.2009). In that case, CedarBridge, the buyer at a delinquent tax sale filed a petition seeking to quiet title to the properties it acquired by virtue of the tax sale. *Id.* at 465. The trial court ruled against Cedar-Bridge, quieting title in the record owner of the property prior to the tax sale, finding that CedarBridge's collector's deeds were invalid for failure to comply with the notice requirements of § 140.405. *Id.* at 467. The Eastern District of this Court sought to clarify the notice requirements in delinquent tax sales by giving a summary of those provisions. *Id.* at 466–67. Citing *Keylien* as authority, the Court

stated that, "in a first or second offering tax sale, the notice must inform the recipient that s/he has one year from the date of the tax sale to redeem the property or be forever barred from doing so." *Id.* at 465. As to first and second offering tax sales, the Court declared that "[t]he purchaser must send the notice at least ninety days before it is authorized to acquire the deed to the property, i.e. at least ninety days before the expiration of the one-year redemption." *Id.* *CedarBridge* then discussed the form of the notice in a third offering tax sale, stating that:

> the notice must inform the recipient that s/he has ninety days from the date the purchaser files the affidavit with the county collector in which to redeem the property or be forever barred from doing so. Thus, third offering notices *must* inform the recipient of the date on which the purchaser intends to file an affidavit with the county collector.... Again, the ninety day redemption period begins to run on the day the affidavit is filed.

*Id.* at 465–66 (internal citations omitted).

*CedarBridge* was followed closely by *Hames v. Bellistri,* 300 S.W.3d 235 (Mo. App. E.D.2009). In that case, Hames was the owner of real property that was sold to Bellistri at a tax sale. *Id.* at 237. After Bellistri obtained a collector's deed, Hames filed a petition seeking, among other things, to set aside the tax sale and collector's deed and to declare him the fee simple owner of the property. *Id.* The trial court granted summary judgment to the tax sale purchaser and the collector. *Id.* at 237–38. Hames appealed and the

---

9. As discussed, *supra,* this, of course, would be inaccurate because the redemption period extends beyond expiration of the one year period following the date of sale and continues until the purchaser actually obtains the collector's deed. *See Hobson v. Elmer,* 349 Mo. 1131, 163 S.W.2d 1020, 1023 (1942). It would likewise be inaccurate because § 140.350 allows infants, incapacitated, or disabled persons to redeem within one year of the expiration of their disability.

Eastern District found that the notice sent by Bellistri to Hames pursuant to § 140.405 was defective in that it stated that Hames had ninety days from the date of receipt of the notice in which to redeem. *Id.* at 239–40. The court noted that this was a second offering tax sale and that the ninety day period of redemption applied only to third offering tax sales. *Id.* at 239. Therefore, since the notice was defective according to the court and, consequently, the purchaser lost all interest in the property, the trial court erred in granting judgment to the purchaser. *Id.* at 239–40.

The Southern District of this Court then decided *Drake Development & Construction, LLC v. Jacob Holdings, Inc.,* 306 S.W.3d 171 (Mo.App. S.D.2010). In that case, Jacob Holdings, the owner of certain real estate that was sold at a tax auction, asserted that the notice given to it pursuant to § 140.405 was defective. *Id.* at 172. The trial court disagreed, finding that the notices were adequate and ruling in favor of the purchaser at the tax sale. *Id.* On appeal, the Southern District noted the Eastern District decisions in *Keylien* and *CedarBridge* and held:

> The notice in this case did not inform appellant how long it had to exercise its right to redeem or be forever barred from doing so. It provided neither a specific redemption period expiration date nor a number of days indicating the length of time Appellant had to redeem its property. Under the cited cases, therefore, it fails to comply with § 140.405's requirement that the property owner be notified of its right to redeem.

*Id.* at 174.[10]

As can be seen, *Keylien, CedarBridge, Hames,* and *Drake Development* all find § 140.405 notices defective because the content of the notices was deemed insufficient. However, none of those cases addressed what content is required by statute or due process. Rather, they **assumed** that the § 140.405 notice must contain specific details. As suggested *supra,* a review of the statute and case law leads to a different conclusion.

Turning once again to the statute itself, Subpart II of § 140.405 dictates that "the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to **redeem** such person's publicly recorded security or claim." (Emphasis added.) Similarly, Subpart III states that "the purchaser of said property at a third-offering tax auction shall notify anyone with a pub-

---

**10.** In *Drake Development,* the court observed in a footnote that a conflict existed as to *when* the ninety day notice required by Subpart II of § 140.405 must be sent. 306 S.W.3d at 174, n. 2. The court pointed out that *CedarBridge* conflicted with this court's earlier decision in *Boston v. Williamson,* 807 S.W.2d 216 (Mo.App. W.D.1991). *Id.* In *Boston,* this court held that "[t]he phrase 'authorized to acquire the deed' refers to the date between [one] and [two] years from the sale on which the purchaser delivers his certificate of purchase to the collector. It is the date chosen by the purchaser on which he elects to acquire the deed which triggers the ninety day notice." 807 S.W.2d at 218. Without mentioning *Boston, CedarBridge* concluded that "[t]he purchaser must send the notice at least ninety days before it is authorized to acquire the deed to the property, i.e. at least ninety days before the expiration of the one year redemption period." *CedarBridge,* 293 S.W.3d at 465. We perceive that this court's interpretation in *Boston* is correct because the *CedarBridge* interpretation requires the court to add a word to the statute, so it would read *"first* authorized to acquire the deed." "A court may not add words by implication to a statute that is clear and unambiguous." *Asbury v. Lombardi,* 846 S.W.2d 196, 202 n. 9 (Mo. banc 1993). Nonetheless, Appellant does not raise the issue of *when* the notice was sent in this appeal, and, therefore, we merely note the apparent conflict.

licly recorded deed of trust, mortgage, lease, lien or claim upon the real estate pursuant to this section." Based on the express wording of the statute, it is apparent that the legislature is directing that tax sale purchasers notify those specified of their "right to redeem." The question then becomes what, if anything, the notice must state beyond informing the recipient that he or she has a "right to redeem" the property.

▪ The second, and even more fundamental, source of direction regarding what information must be provided to the recipients of notice pursuant to § 140.405 is constitutional due process. Fundamental fairness is, of course, the touchstone of due process of law. *Abel v. Wyrick*, 574 S.W.2d 411, 420 (Mo. banc 1978). "The due process clauses under the United States and Missouri constitutions prohibit the taking of life, liberty, or property without due process of law." *Colyer v. State Bd. of Registration for the Healing Arts*, 257 S.W.3d 139, 144 (Mo.App. W.D.2008). "[I]t is now established that the right to meaningful notice extends to actions affecting property interests in a variety of circumstances and that due process imposes corresponding duties upon those who would affect the rights of holders of such property interests." *Schwartz v. Dey*, 665 S.W.2d 933, 934 (Mo. banc 1984). "[I]n *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court held that a mortgagee's publicly recorded interest in property was sufficient to entitle her to mailed notice of a tax sale." *Id.* at 935. "Thus, due process requires that known parties whose rights would be affected by a tax sale be afforded notice reasonably calculated under all of the circumstances to apprise them of the pendency of the action." *Id.*

▪ " 'The fundamental requisite of due process of law is the opportunity to be heard.' " *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." 339 U.S. at 314, 70 S.Ct. at 657. However, "[d]ue process does not require notice that some particular step must be taken or that certain procedure be followed; the opportunity afforded is to make a choice of whether to 'appear or default, acquiesce or contest.' " *State v. Goodbar*, 297 S.W.2d 525, 528 (Mo.1957) (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657). Thus, legal advice need not be given in the notice, and the recipient "must be held to a knowledge of the law." *Bishop v. Bd. of Educ. of Francis Howell Sch. Dist.*, 575 S.W.2d 827, 829 (Mo.App. E.D.1978).

In *City of West Covina v. Perkins*, 525 U.S. 234, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999), the United States Supreme Court confirmed the correctness of *Goodbar* and *Bishop*, and clarified application of the principle. *West Covina* involved claims for return of property seized by the City pursuant to a search warrant during a criminal investigation. 525 U.S. at 236–37, 119 S.Ct. at 679–80. Among other things, Perkins claimed that notice given to him by the City regarding the seizure did not give adequate notice of his remedies for return of the property or of the means to invoke them. 525 U.S. at 240, 119 S.Ct. at 681. Both the district court and the Ninth Circuit Court of Appeals found that the state law remedies were adequate and satisfied due process. 525 U.S. at 238–39, 119 S.Ct. at 680–81. However, relying on *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Court of Appeals held "that the City

was required to give respondents notice of the state procedures for return of seized property and the information necessary to invoke those procedures." 525 U.S. at 239, 119 S.Ct. at 680–81.

In reversing the Court of Appeals, the *West Covina* Court first noted that there was no rationale to justify an "individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law." 525 U.S. at 241, 119 S.Ct. at 681. Rather, "[o]nce the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options." 525 U.S. at 241, 119 S.Ct. at 681–82. For that proposition, the Court quoted from *Atkins v. Parker*, 472 U.S. 115, 131, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985), where the Court stated that "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." *West Covina*, 525 U.S. at 241, 119 S.Ct. at 682.

The Court likewise rejected the contention that *Memphis Light* required a contrary conclusion. The Court stated:

In *Memphis Light*, the Court held that a public utility must make available to its customers the opportunity to discuss a billing dispute with a utility employee who has authority to resolve the matter before terminating utility service for nonpayment. The Court also held that due process required the utility to inform the customer not only of the planned termination, but also of the availability and general contours of the internal administrative procedure for resolving the accounting dispute. In requiring notice of the administrative procedures, however, we relied not on any general principle that the government must provide notice of the procedures for protecting one's property interests but on the fact that the administrative procedures at issue were not described in any publicly available document. A customer who was informed that the utility planned to terminate his service could not reasonably be expected to educate himself about the procedures available to protect his interests[.]

\* \* \*

While *Memphis Light* demonstrates that notice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public, it does not support a general rule that notice of remedies and procedures is required.

525 U.S. at 241–42, 119 S.Ct. at 682 (internal citations omitted).

*West Covina*, therefore, stands for the basic proposition that individualized notice of the procedures for protecting one's property interest is unnecessary to comply with due process where that information is readily available in "published, generally available state statutes and case law." 525 U.S. at 241, 119 S.Ct. at 681. Moreover, to the extent that the *Mullane* standard requires that adequacy of the notice be considered under all the circumstances, the § 140.405 notices, if given in a manner consistent with due process, as discussed in more detail *infra*, are reasonably calculated to apprise record owners and lienholders of the pendency of the action, i.e., that their property has been taken and they have a right to redeem, so that they may "pursue available remedies for its return." 525 U.S. at 240, 119 S.Ct. at 681. This includes, of necessity, that the amount of time given to record owners and lienholders to permit them to locate and

read the statutes and case law and to generally educate themselves about their redemption rights, is adequate. The statute requires that the notice is mailed at least ninety days prior to the date the purchaser is authorized to receive a collector's deed, whether it is a first, second, or third offering tax sale. Clearly, ninety days is sufficient under all the circumstances to comply with due process. *See Arrington v. Helms*, 438 F.3d 1336, 1351–53 (11th Cir.2006) ("30 days in which to locate and read the statutes, regulations, and publicly available documents . . . , and submit a written request for a hearing . . . . constitutes a reasonable amount of time under the *Mullane* standard.").

■ Applying these principles to property tax sales, in particular post-sale notices regarding redemption rights pursuant to § 140.405, apprising record owners and lienholders "of the pendency of the action," *Schwartz*, 665 S.W.2d at 935, means informing them that they have a right to redeem. Consistent with *West Covina, Goodbar*, and *Bishop*, there is no due process requirement to inform those receiving notice of the specific time limits applicable for redemption, the specific procedures that must be followed, or any other details, nor is there any such requirement in § 140.405. Those matters are readily available to all persons by "published, generally available state statutes and case law." *West Covina*, 525 U.S. at 241, 119 S.Ct. at 681. To the extent this conclusion is inconsistent with holdings in *Keylien, CedarBridge, Hames*, and *Drake Development*, we respectfully decline to follow those cases.

■ In light of this conclusion, it is obvious that Appellant's contentions in Point I must fail. The notice sent by the Clarks informed Appellant that it had a right to redeem the property and that it needed to contact the Cass County Collector's office to do so. While the notice is not the model for compliance with the notice requirement contained in § 140.405, we cannot say that it is so wholly insufficient as to fail to comply with the statute. The fact that the notice stated that Appellant had ninety days in which to redeem the property is of no consequence. As we have found, the notice need not have stated any time frame for redemption. Moreover, the notice did not mislead Appellant; Appellant never received the notice. And even it had been received, it would not have been inaccurate because the notice was postmarked June 14, 2006; the Clarks were authorized to acquire the collector's deed on or after August 22, 2006; and the Clarks waited until September 12, 2006, the ninetieth day after the date the letter was posted. *See Boston v. Williamson*, 807 S.W.2d 216, 218 (Mo.App. W.D.1991). Point I is denied.

In Point II, Appellant argues that both the Cass County Collector and the Clarks violated its due process right to notice by failing to take additional reasonable steps to notify Appellant after the tax sale notice and redemption notice were returned as undeliverable. Appellant cites *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), and *Schlereth v. Hardy*, 280 S.W.3d 47 (Mo. banc 2009), in support of its contention.

In *Jones*, the U.S. Supreme Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." 547 U.S. at 225, 126 S.Ct. at 1713. The Missouri Supreme Court subsequently relied on, and clarified the application of, *Jones* in *Schlereth*. In that case, Schlereth bought a piece of real estate at a tax sale. *Schlereth*, 280 S.W.3d at 49. He sent a § 140.405 notice of redemption rights to the record owner, Hardy. *Id.* It

was sent to the correct address by certified mail, and Hardy knew of attempts to deliver but never picked it up. *Id.* Hardy did not redeem the property, and eventually the collector provided a collector's deed to Schlereth, who then filed a quiet title action. *Id.* The trial court ultimately ruled that the collector's deed was void because the notice provided to Hardy, or more accurately the attempts at giving notice, were constitutionally inadequate and violated Hardy's due process rights. *Id.*

Discussing *Jones,* the Missouri Supreme Court stated:

> The *Jones* holding is a direct descendant of the seminal case about constitutional notice, *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), but with an added twist. Under *Mullane,* the adequacy of notice is assessed by what is known *before the notice is sent. Jones,* however, holds that the government must act on information received *after the notice was sent,* that is, that the notice was returned unclaimed.

> "An elementary and fundamental requirement of due process," the Supreme Court held in *Mullane,* " . . . is notice reasonably calculated to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. 652 (emphasis added). In this case, there is no question that Schlereth, proceeding under section 140.405, takes on the governmental obligation to give notice that satisfies due process. The redemption notice by certified mail under section 140.405 is the first and only realistic attempt actually to notify the property owner; after *Mullane,* no one pretends that the notice by publication of a tax sale was reasonably calculated to give notice to Hardy.

To evaluate the reasonableness of the notice, the *Mullane* court put forward the standard of whether "the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* Here, sending certified mail to Hardy's known and actual residence, which included two notifications of attempted delivery, seems reasonably calculated to notify Hardy of her redemption rights—until the sender learns that the notice was unclaimed. That is the *Jones* extension of *Mullane.*

*Schlereth,* 280 S.W.3d at 50–51. The Court then applied the *Jones* holding to the *Schlereth* facts:

> For nearly 60 years, *Mullane* has alerted American lawyers that notice provisions prescribed in state statutes may not be constitutionally sufficient. *Mullane* held that a statutorily prescribed notice by publication was insufficient to cut off the rights of beneficiaries to make claims against their trustee as to the management of funds in a common trust. Schlereth followed section 140.405 precisely and sent certified mail to Hardy at her residence address, and the postal service documented two attempts at delivery. But *Jones* compels Schlereth, who is required by the statute to give notice, to take additional steps to ensure adequate notice when he learns that the certified mail notice is unclaimed. The burden of providing a constitutionally adequate notice falls squarely on Schlereth—the notice by publication of the tax sale of the property would not meet the longstanding requirements of notice explained in *Mullane,* especially given that the tax collector had Hardy's correct address.

> As a matter of prudence as well perhaps as constitutional necessity, there-

fore, a person who sends notice by certified mail—even where (as here) that is the only method the statute prescribes—may be well advised to use a process server to ensure that the best notice practicable is delivered if the addressee does not sign for it. The interest of a tax sale buyer, such as Schlereth in this case, is to quiet title and settle his interest in the property so that his title cannot be set aside on the grounds that the notice—which he is required to send to the tax-delinquent former owner as to her redemption rights—was constitutionally insufficient. Some follow-up notice was required, whether by regular mail, posted notice calculated to notify the owner or service by a process server. In this case, however, Schlereth did not follow up.

*Id.* at 52–53.

In addition to *Jones* and *Schlereth*, other cases bear on the analysis of Appellant's second point. As noted, *supra*, Chapter 140 only requires the collector to give the property owner notice of an impending tax sale by publication. In *Schwartz*, the collector sent numerous notices of tax due to the Schwartzs', who were the record owners of certain property on which taxes were delinquent, 665 S.W.2d at 934. They were returned undelivered. The collector then sent notices of tax sale, which were likewise returned by the post office, and also published notice of the tax sale as required by statute. *Id.* In addition, after the notices were returned, the collector consulted the telephone directory and personal tax files in an attempt to locate the owners, all to no avail. *Id.* Ultimately, the collector sold the property to the Deys. *Id.* Subsequently, the Schwartzs' brought an

action to set aside the collector's deed, asserting, among other things, that the collector's notices were constitutionally inadequate. *Id.* at 933. The trial court rejected the Schwartzs' arguments and granted the Deys' motion to dismiss. *Id.*

On appeal, the Missouri Supreme Court, citing *Mullane*, stated that "it is now established that the right to meaningful notice extends to actions affecting property interests in a variety of circumstances and that due process imposes corresponding duties upon those who would affect the rights of holders of such property interests." *Id.* at 934. "Thus, due process requires that known parties whose rights would be affected by a tax sale be afforded notice reasonably calculated under all of the circumstances to apprise them of the pendency of the action." *Id.* at 935. Nevertheless, the Court remanded the case to the trial court for further proceedings because "[t]he record before the Court ... does not indicate the means at the Collector's disposal by which he could conceivably have obtained the Schwartzes' actual address" and "[t]he posture of this case demonstrates that the parties should be afforded the opportunity to develop a record upon which a court could assess the means available to the Collector in balance with the duties imposed by due process." [11] *Id.*

Upon similar facts, the Eastern District of this Court recently reached a similar result. In *Investment Corp. of Virginias, Inc. v. Acquaviva*, 302 S.W.3d 195, 200 (Mo.App. E.D.2009), the court stated:

> *Schwartz* constitutes the controlling Missouri Supreme Court opinion on a

11. On remand, the trial court "found that plaintiffs received the 1978 and 1979 tax bills and at least one delinquency notice" and "concluded that, under the circumstances of this case, the collector was not required to take further steps to effectuate notice." *Schwartz v. Dey*, 780 S.W.2d 42, 43 (Mo. banc 1989) (*Schwartz II* ). The Missouri Supreme Court affirmed the decision. *Id.* at 45.

collector's obligation to give an owner constitutionally adequate pre-sale notice. *Schwartz* is consistent with *Jones*, which requires a collector to take additional reasonable steps to provide notice of a tax sale prior to the sale when the original mailed notice was returned undelivered, if it is practicable to do so.

Consistent with the *Schwartz* analysis, the *Acquaviva* court found the summary judgment record before it inadequate to "determine whether, under the circumstances, additional reasonable steps to ensure adequate notice were available to the Collector without such a record." *Id.* at 201. Accordingly, the case was remanded for further proceedings. *Id.* at 202.

*Jones* and *Schlereth* involved certified mail notices that were *unclaimed*, while *Schwartz* and *Acquaviva* dealt with notices that were returned by the post office as ***undeliverable***. The difference is significant. When the postal service returns a letter as undeliverable with no forwarding address, the sender knows that they have the wrong address for the intended recipient. When a certified letter is returned as unclaimed, the sender simply knows that the intended recipient has not received the notice.

The case *sub judice* is factually similar to *Schwartz* and *Acquaviva* wherein the senders had no known address for the intended recipient once the postal service informed them that the notices were undeliverable with no forwarding address. The appellate courts in both instances, while holding that "due process requires that known parties whose rights would be affected by a tax sale be afforded notice reasonably calculated under all of the circumstances to apprise them of the pendency of the action," *Schwartz*, 665 S.W.2d at 935, nonetheless recognized that additional notice is only required when "it is practicable to do so." *Acquaviva*, 302

S.W.3d at 200. Since the dismissal and summary judgment records were inadequate for the appellate courts to determine whether additional reasonable steps were available to provide notice reasonably calculated to apprise recipients of the pendency of the action, the appellate courts remanded for further proceedings. *Schwartz*, 665 S.W.2d at 935; *Acquaviva*, 302 S.W.3d at 201.

Unlike *Schwartz* and *Acquaviva*, however, the case at bar was tried to the court, an extensive record was made, and the trial court made detailed findings of fact and conclusions of law. In other words, in the present case, the trial court had before it a great deal of evidence from which it could, and did, decide "whether, under the circumstances, additional reasonable steps to ensure adequate notice were available," *Acquaviva*, 302 S.W.3d at 201, to the Collector and/or the Clarks.

The evidence established that the real estate in question is undeveloped land located in rural Cass County. The land has no buildings on it, and no one lives on it. Norma and Clinton Tracy owned the property prior to July 20, 1992. On that date, the Tracys conveyed the property to Coast–to–Coast Holding Trust. Coast–to–Coast was an "off-shore" trust domiciled in Grand Turks, Caicos, British West Indies. It never registered to do business in Missouri and was not otherwise registered with the State (i.e., via a fictitious name registration). Neither Appellant nor the Trust Manager (Mr. Tracy) was identified on the warranty deed conveying the Property to the Trust. Moreover, no document was ever filed in Missouri, much less Cass County, from which one could discern that Mr. Tracy had an interest in the Trust.

One of Mr. Tracy's responsibilities as the Trust's manager was to pay the real estate taxes on the property to the County. The address provided to the County for

the Trust was a post office box in Grand-view. At some point, the Trust stopped maintaining the post office box but never provided the County with a change of address, even though it was Mr. Tracy's responsibility to do so. In addition, the Trust failed to pay the property taxes beginning with the year 2003.

Among many other factual findings, the trial found that "Coast–to–Coast is a nondescript, 'off-shore' trust and neither [the collector] nor the Clarks could discern, based on its name, who held an interest in the trust," as would a name such as the "Norma and Clinton Tracy Family Trust." The trial court also noted that "[t]he only publicly recorded document that identified Mr. Tracy as an interested party in the Trust was filed in Maricopa County, Arizona." The trial court further found that "[b]y conveying the Property to a nondescript, "off-shore" trust, failing to keep the Trust's address updated with the County, failing to give a forwarding address, failing to file any sort of public record concerning who the Trust's manager (or any other interested party) was, and failing to list the Trust Manager's name on the 1992 conveyance, Plaintiff made itself immune from receiving notice of the Tax Sale via mail or via process service."

With respect to the collector and the Clarks' efforts to provide the Trust with notice, the trial court made several findings, all of which were supported by the evidence:

9. In April, July, and November of 2004, Ms. Shipley, in her capacity as Cass County Collector, sent notices via first class, regular mail to Plaintiff at the Grandview Address that its 2003 property taxes were delinquent.

\* \* \*

11. In April and July of 2005, Ms. Shipley's office sent Plaintiff notices via first class, regular mail to the Grandview Address that the Property would be sold at the August 22, 2005, tax sale ("Tax Sale") if the 2003 and 2004 delinquent property taxes were not paid beforehand ("Pre–Tax Sale Notices"). These Pre–Tax Sale Notices were returned to Ms. Shipley by the United States Postal Service as undeliverable and no forwarding address was given.

\* \* \*

14. Ms. Shipley's office performs the following search every time a tax sale notice is returned undeliverable: (1) review the returned envelope to determine if the postal service included a forwarding address; (2) if no forwarding address is given, inquire with the County Assessor's office to determine if that office *has* a different address for the property owner; (3) if the Assessor has no better address, inquire with the County's Personal Property Division to see if the property owner has a different address on its personal property statement; (4) the office will also call directory assistance to try to locate and contact the property owner and search the Internet white pages or Internet yellow pages to locate the property owner.

15. Ms. Shipley's office conducted the search outlined in the above-stated finding after the Pre–Tax Sale notices, which were sent to Plaintiff at the Grandview Address, were returned undeliverable. Plaintiff could not be located via any of these searches as: (1) it failed to give any forwarding address to the post office, (2) it failed to update its address with the Assessor's office, (3) it did not own any personal property (and thus, there was no better address in the Personal Property Division); and (4) it was not listed with directory assistance or in the white pages or yellow pages.

16. On August 24, 2005, Ms. Shipley sent Plaintiff notice via first class, regular mail to the Grandview Address that the Property had been sold at the Tax Sale ("Post–Tax Sale Notice"). The U.S. Postal Service returned the Post–Tax Sale Notice to Ms. Shipley as undeliverable and no forwarding address was given.

\* \* \*

22. On or about June 14, 2006, Defendant Keith Clark sent a letter (dated June 13, 2006), via certified mail, return receipt requested, to the Grandview Address notifying Plaintiff that the Clarks had purchased the County's tax lien on the Property at the Tax Sale and were preparing to file for a Collector's Deed ("Clarks' Letter").

\* \* \*

24. The Clarks' Letter was returned by the United States Postal Service as "undeliverable" and no forwarding address was listed.

\* \* \*

26. The Clarks had previously attempted to locate an address for Plaintiff by searching directory assistance and the Internet. After receiving the notice returned undeliverable, Keith Clark located the company that maintained the Grandview Address (it was a mail drop) and requested Plaintiff's new address. However, he was told that the information could not be given to him.

\* \* \*

31. At all times relevant to this lawsuit, neither Ms. Shipley nor the Clarks acquired any new, useful piece of information from the returned notices or otherwise that would have enabled them to locate and notify Plaintiff of the Tax Sale.

\* \* \*

35. Posting notice of the Tax Sale on the Property was both unreasonable and impracticable as there was absolutely no direction from the State (via statute, regulation, or otherwise) instructing Ms. Shipley or the Clarks on things like when to begin posting, where to post, what the posted notice should include, how long the posted notice should be present, and whether it was necessary to check on the posting to ensure it was still intact.

36. Posting notice of the Tax Sale on the Property was both unreasonable and impracticable as posting tax sale notice is not customary in Missouri and no other collectors were known to post notice at that time.

37. Posting notice was impracticable given that there are more than 40,000 property taxpayers in the County and the County is approximately 700 square miles.

38. Mr. Tracy knew of his obligation to pay taxes on the Property and knew the process to pay those taxes as he had paid the property taxes on his principal residence for over 24 years.

In *Jones*, the United States Supreme Court stated that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." 547 U.S. at 226, 126 S.Ct. at 1713. Rather, it requires notice that is " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " 547 U.S. at 226, 126 S.Ct. at 1713–14 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657). The *Jones* Court's suggestions for follow up notice when certified mail is returned unclaimed were regular mail to the individual, mail addressed to "occupant," or posting notice *"on the front door."* 547 U.S. at 235, 126

S.Ct. at 1719 (emphasis added). In *Schlereth,* where the certified mail notice was unclaimed, the Missouri Supreme Court suggested that follow up notice might be "by regular mail, posted notice calculated to notify the owner or service by a process server." *Schlereth,* 280 S.W.3d at 53. But follow up notice is only required "if it is practicable to do so." *Jones,* 547 U.S. at 225, 126 S.Ct. at 1713. Therefore, the question is what could the collector or the Clarks have done that was not only practicable but substantially more likely under all the circumstances to provide notice to Appellant than the regular and certified mail they had already used.

In answering this question, it must be remembered that "[t]he sufficiency of notice must be tested with reference to its ability to inform people of the pendency of proceedings that affect their interests." *Greene v. Lindsey,* 456 U.S. 444, 451, 102 S.Ct. 1874, 1875, 72 L.Ed.2d 249 (1982). The inquiry must be as to the objective reasonableness of the attempts at giving notice, based on the knowledge available to those sending notice at the time, or new information acquired from earlier attempts. "It is certainly true, . . . that the failure of notice in a specific case does not establish the inadequacy of the attempted notice; in that sense, the constitutionality of a particular procedure for notice is assessed *ex ante* ["before the event"], rather than *post hoc* ["after this"]." *Jones,* 547 U.S. at 231, 126 S.Ct. at 1717.

We look first at what additional steps the collector and the Clarks undertook in trying to provide notice to Appellant. The collector sent two pre-sale notices via first class, regular mail to the Grandview post office box address stating that the property would be sold for taxes. This attempt at notice was over and above that required by the Jones–Munger Act.

After these pre-sale notices were returned, the collector checked the returned envelopes for a forwarding address, inquired of the County Assessor to determine if that office had a different address for the Appellant, checked with the County's personal property division to see if the Appellant had a different address on its personal property statement, and checked with directory assistance as well as searching the internet white pages and yellow pages trying to locate the owner. None of these efforts were required by statute. Moreover, none of them were successful because, as the trial court found, Appellant "(1) . . . failed to give any forwarding address to the post office, (2) . . . failed to update its address with the Assessor's office, (3) . . . did not own any personal property (and thus, there was no better address in the Personal Property Division); and (4) . . . was not listed with directory assistance or in the white pages or yellow pages." The collector then published notice that the property would be up for auction at the tax sale for three consecutive weeks as required by statute. Two days after the sale to the Clarks, the collector sent Appellant notice via first class, regular mail to the Grandview address that the property had been sold at the tax sale. This attempt at notice was likewise over and above that required by statute.

In evaluating whether there was anything more that was practicable for the collector to do, we consider the options suggested in *Jones* and *Schlereth.* Those cases involved post-sale notices where the initial attempt was made by certified mail. Thus, those courts suggested a follow up method to be regular mail. Here, the collector's first efforts were by regular mail, and all such notices were returned by the post office as undeliverable with no forwarding address. Was it practicable or reasonable, under all the circumstances, to

then follow up with certified mail to the same address? The answer is obviously "no." The collector was not confronted with an unclaimed mail situation. Rather, this was a situation where the address was no longer valid, and there was no forwarding address. Certified mail was not a practicable solution.

Addressing mail to "occupant" was likewise impracticable. There was no residence. The only known address was a post office box that was no longer valid. Mail addressed to occupant would have been returned undeliverable also.

Similarly, personal service was not an option. The collector had no idea who to serve personally because the trust was offshore and had no registration whatsoever in the State of Missouri. Indeed, there was no individual named anywhere that was known or readily available to the collector to make this option even possible.

 We turn then to the only recognized alternative measure that the collector had enough information to even possibly use, posting notice. The collector could locate the property based on the legal description. Posting notice generally satisfies due process only if it is "calculated to notify the owner." *Schlereth*, 280 S.W.3d at 53. *See also Greene*, 456 U.S. 444, 102 S.Ct. 1874; *Mennonite Bd. of Missions*, 462 U.S. 791, 103 S.Ct. 2706 (1983).

When the Supreme Court referred to posting notice as a possible option in *Jones*, it did so in the context of *"post[ing]*

*notice on the front door."* 547 U.S. at 235, 126 S.Ct. at 1719 (emphasis added). In the context of improved property, posting notice makes some sense. But the land in this case is rural, unimproved land. There are no buildings on it, much less an occupied residence. There were no walls or doors on which to post notice. The best that could have been done was to tack a notice on the side of a tree.

The rationale for using posted notice is that an owner or occupant will see the notice. But such logic is absent where there is no residence or building upon which to post a notice. As the trial court stated in its conclusions of law:

> Posting was even more unreasonable given that the Property is located on an unnamed street with presumably few passersby. If posting notice is ever a "reasonable" step to give notice, it is not reasonable when (as here) the land is unimproved, rural, located on an unnamed street, and titled in the name of a non-descriptive, "off-shore" trust.

Evidence was presented that posting notices of tax sale is not customary in Missouri and that no other collectors were known to do so. Other evidence was adduced that Cass County contains over 700 square miles of land and more than 40,000 different property tax payers. Based on this evidence, the trial court expressly found that in this particular set of circumstances, posting notice "was both unreasonable and impracticable."[12]

---

**12.** The Trustee makes much of the fact that the Trust Manager and his son live on property that either adjoins or is near the real estate that was sold. However, these facts were unknown to the Collector and the Clarks at the time notices were being attempted, and did not come to light until suit was filed, or perhaps even the time of trial. As the United States Supreme Court has observed, "the failure of notice in a specific case does not estab-

lish the inadequacy of the attempted notice." *Jones*, 547 U.S. at 231, 126 S.Ct. at 1717. Rather, "the constitutionality of a particular procedure for notice is assessed ex ante ["before the event"], rather than post-hoc ["after this"]." *Id.* Thus, had the Collector and the Clarks known *who* the Trust Manager and his son were, and *where* they lived, *before* the tax sale or at the time the Clarks sent their notice, it would certainly have been relevant. But

In *Jones* it was argued that the Commissioner in that case "should have searched for [Jones'] new address in the Little Rock phonebook and other government records such as income tax rolls." 547 U.S. at 235–36, 126 S.Ct. at 1719. The U.S. Supreme Court expressly rejected that argument, stating, "We do not believe the government was required to go this far.... An open-ended search for a new address—especially when the State obligates the taxpayer to keep his address updated with the tax collector—imposes burdens on the State significantly greater than the several relatively easy options outlined above." 547 U.S. at 236, 126 S.Ct. at 1719 (internal citation omitted). In the case *sub judice*, the collector did everything that the United States Supreme Court expressly found to *exceed* the requirements of due process, and even more. The collector checked phone directories and the internet. She checked the personal property tax rolls and the County Assessor's office, as well as looking for a forwarding address. The collector sent pre-sale and post-sale notices that were not required by statute, in addition to publishing notice as required by the Jones–Munger Act. The "several relatively easy options outlined" by the *Jones* Court were impracticable for the collector in this case and were not reasonably calculated to provide notice to the Appellant.

In *Jones*, the Supreme Court recognized that there might be occasions when nothing more could be done in trying to provide notice. "[I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Jones*, 547 U.S. at 234, 126 S.Ct. at 1718. And in *Mullane*, the Court expressly held that notice by publication was sufficient when addresses are unknown. "Those ... whose interests or whereabouts could not with due diligence be ascertained come clearly within this category. As to them the statutory notice is sufficient." *Mullane*, 339 U.S. at 317, 70 S.Ct. at 659. "Accordingly, we overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose interests or addresses are unknown to the trustee." 339 U.S. at 318, 70 S.Ct. at 659. For all of these reasons, we conclude that the collector did not violate the Appellant's due process rights to notice of the tax sale.

▇▇▇ And for essentially the same reasons, we find that the Clarks did not violate Appellant's due process rights as applicable to the right of redemption. The Clarks complied with § 140.405 by sending the required notice to Appellant's last known address by certified mail. The notice was returned as undeliverable with no forwarding address. Prior to sending the notice, the Clarks searched directory assistance and the internet trying to find a better or more recent address for Appellant, all to no avail. After the notice was returned undeliverable, the Clarks continued to try to locate Appellant's address. Keith Clark found the company that maintained the Grandview post office box address and requested Appellant's new or forwarding address. He was told that the information could not be given to him.

In this case, the Appellant effectively rendered itself immune from receiving notice. As observed earlier, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U.S. at 226, 126 S.Ct. at 1713. It only

---

for all the reasons found by the trial court and explained *supra*, this information was unknown until long after the events giving rise to this litigation, and therefore, is irrelevant to the due process analysis.

requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 652. For all of the reasons discussed, *supra*, regarding the collector, the alternative notice options outlined in *Jones* and *Schlereth* were also impracticable for the Clarks in this case and were not reasonably calculated to provide notice to the Appellant. There were no additional reasonable steps that the Clarks could have taken upon return of the undeliverable notice, and therefore, they cannot "be faulted for doing nothing" more than they did. Appellant's Point II is denied.

The judgment of the trial court is affirmed.

All concur.